**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: CONSTRUCTION EQUIPMENT RENTAL ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 1:25-cv-03487<br>MDL No. 3152<br><br>Hon. Sara L. Ellis |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AXG ROOFING'S MOTION TO APPOINT ORIGINATING COUNSEL AS INTERIM CO-LEAD CLASS COUNSEL**

Plaintiff AXG Roofing, LLC ("Plaintiff") moves for the appointment of Zachary Caplan, Michaela Wallin, and Daniel Walker of Berger Montague PC ("Berger Montague"), Natasha Fernández-Silber and Sarah LaFreniere of Edelson PC ("Edelson"), and Gary I. Smith, Jr. and Swathi Bojedla of Hausfeld LLP ("Hausfeld") (collectively, "Originating Counsel") as Interim Co-Lead Counsel for the putative class of construction equipment renters (the "Class").

## I. INTRODUCTION

This antitrust MDL targets misconduct that strikes at the heart of our nation's housing, commercial centers, and infrastructure. Plaintiffs allege that construction equipment giants—including United, Sunbelt, and HERC (the "Rental Company Defendants")—conspired with Rouse Services LLC ("Rouse") to fix rental prices through use of a shared algorithm. This scheme forced American businesses and workers to pay inflated prices for excavators, cranes, and other equipment essential to construction.

On April 1, 2025, Originating Counsel filed the first action in the country to expose this conspiracy. Compl., *AXG Roofing, LLC v. RB Global, Inc.*, No. 1:25-cv-03487, ECF No. 1 (N.D. Ill. Apr. 1, 2025) (Ellis, J.). That complaint was the product of months of original investigation,

including cultivating confidential industry sources who revealed critical details of the collusion. For example, a former Sunbelt employee confirmed that Rouse collects and updates non-public pricing and supply data in "pretty close to real time." *Id.* ¶ 80. A former HERC employee disclosed that sales managers relied on Rouse's pricing guidelines as "standard operating procedure" in daily pricing decisions and used competitor data to decide "where [they] were at versus the competition." *Id.* ¶¶ 88, 93. Another insider reported Defendants followed Rouse's pricing about 90% of the time. *Id.* ¶¶ 16, 123. And another said Rouse pitched its platform by telling rental companies: "[C]ompetitors around you are using us, [so] you should use us [too]." *Id.* ¶¶ 14, 115.

After AXG's complaint, a slew of follow-on actions were filed. Many of those complaints did not simply echo Originating Counsel's work—they repeated, often verbatim, proprietary allegations drawn from Originating Counsel's confidential sources. *See, e.g.*, Compl. at ¶¶ 81, 83, 90, 100, 105-08, 111, 123, 142, 161-63, 165-67, 260, *Kris Swanson Constr. v. RB Global, Inc.*, No. 1:25-cv-04236, ECF No. 1 (N.D. Ill. Apr. 17, 2025) (filed by the law firm Lockridge Grindal Nauen PLLP ("Lockridge")); Compl. at ¶¶ 13, 49, 57-61, 71, 78, 84, 93, 103, 118-19, *Mack's Junk Removal v. Rouse Servs., LLC*, No. 2:25-cv-03565, ECF No. 1 (C.D. Cal. Apr. 24, 2025) (filed by the law firm Cuneo Gilbert & LaDuca LLP ("Cuneo")); Compl. at ¶¶ 100-101, *DiPietro Constr. Corp. v. RB Global, Inc.*, No. 1:25-cv-06742, ECF No. 1 (N.D. Ill. June 18, 2025) (filed by Ms. Nussbaum and Ms. Liebenberg).[1] Indeed, as Defendants themselves stated, "the allegations in the later-filed complaints are essentially carbon copies of the allegations in [AXG's] first-filed

[1] At Originating Counsel's request, both Lockridge and Cuneo later filed new pleadings that omitted these copied proprietary allegations. Lockridge re-filed in Connecticut with DiCello Levitt LLP—rather than continuing in this District, where both Lockridge and DiCello had originally filed—while Cuneo amended its California complaint. Although Ms. Nussbaum and Ms. Liebenberg initially committed to supporting Originating Counsel's application, they changed their position on the eve of filing and put in their own application.

complaint." Defs.' Joint Resp. Supp. Centralization at 10, *In re Constr. Equip. Rental Antitrust Litig.*, MDL No. 3152, ECF No. 61 (J.P.M.L. May 29, 2025).

Originating Counsel and their client—AXG Roofing—not only uncovered and developed this case but also have done the most to advance it. Originating Counsel filed the first complaint, coordinated for months with defense counsel, conferred with this Court in multiple proceedings, and prevailed on a contested JPML motion to transfer the actions to this Court. Since centralization, Originating Counsel have again led coordination among all counsel. Just as Rule 23(g) requires, they have performed the earliest and most substantial work identifying and investigating claims, and demonstrated courtroom engagement and success.

Originating Counsel also bring the experience, knowledge, and resources of three premier firms—Berger Montague, Edelson, and Hausfeld—which already lead antitrust actions alleging similar "algorithmic price-fixing" conspiracies, such as *In re MultiPlan Health Insurance Provider Litigation*, MDL No. 3121 (N.D. Ill.) (Kennelly, J.) ("*MultiPlan*") and *In re RealPage Rental Software Antitrust Litigation*, MDL No. 3071 (M.D. Tenn.) ("*RealPage*"). The collective resources of the three proposed co-lead firms—including deep benches of experienced antitrust litigators—ensure this case can be litigated to conclusion without the inefficiency of an additional layer of an executive, steering, or settlement committee of more law firms. At least four plaintiffs—2nd Gen Plumbing, IPCS Corp., IZQ Construction, and the Township of Middletown, New Jersey—in addition to AXG Roofing have pledged their support to Originating Counsel's three firm co-lead structure because they believe Originating Counsel is best positioned to lead. *See* Exs. D-G (Declarations of Supporting Plaintiffs and Firms).[2] Originating Counsel will manage this MDL

[2] This includes Milberg Coleman Bryson Phillips Grossman, who was lead counsel in *In re: Beyond Meat, Inc. Protein Content Mktg. and Sales Pracs. Litig.*, MDL No. 3059 (N.D. Ill.).

with discipline—enforcing the Time and Expense Protocol and allocating work efficiently without duplication or waste. *See* Ex. H.

Originating Counsel have worked this case up together and want to continue working together. They do not accept outside litigation funding and are committed to prosecuting the case efficiently. Together, they bring not only substantial litigation experience but also up-to-date knowledge of an evolving, technical area of law, having partnered on other cutting-edge antitrust actions that involve issues bearing directly on this MDL. With Originating Counsel, the Court and the Class will get exactly what has already been demonstrated: experienced, collaborative counsel who have invested their own resources to advance the action. Their initiative, expertise, diversity, and broad support are precisely what courts in this District look for when appointing leadership.

## II.  BACKGROUND

### A.  The First-Filed AXG Complaint

On April 1, 2025, after months of independent investigation, Originating Counsel filed a proposed class action in the Northern District of Illinois on behalf of AXG Roofing, LLC, an Illinois company. The AXG Complaint alleges a pervasive, technology-enabled price-fixing scheme in the construction equipment rental industry. It alleges that Rouse Services LLC, through its Rouse Rental Insights program, orchestrated an unlawful agreement among the Rental Company Defendants to restrict output and inflate rental prices in violation of the Sherman Act.

Originating Counsel developed and brought this litigation without the benefit of any preceding government investigation. Originating Counsel devoted hundreds of hours of attorney and investigative time to developing these allegations. Their investigation included: identifying and interviewing industry insiders (including current and former employees and executives of cartel members); consulting with industry experts; reviewing regulatory filings of RB Global, Inc.

and the Rental Company Defendants; vetting potential clients for standing, damages, and adequacy; pinpointing the types of competitively sensitive information exchanged through Rouse; determining which rental companies were most central to the cartel; locating data sources for class-wide damages; and framing viable legal claims. The result was a detailed, original complaint—built from the ground up—that later-filing firms would treat as a template for their own cases. AXG's case was assigned to this Court.

**B. The 21 Later-Filed Actions**

Starting more than two weeks after Originating Counsel filed the AXG Complaint and continuing for months thereafter, other firms began filing follow-on cases in this District, the Central District of California, the Southern District of Iowa, and the District of Connecticut. These later-filed complaints presented no new theories or allegations.

**C. The JPML's Transfer of the Related Actions to this Court**

On May 6, 2025, AXG moved the Judicial Panel on Multidistrict Litigation to centralize all related actions in the Northern District of Illinois. Pl. AXG Roofing, LLC's Subseq. Mot. Transfer Rel. Actions, *Constr. Equip. Rental*, MDL No. 3152, ECF No. 2 (J.P.M.L. May 6, 2025). Competing plaintiffs (represented by DiCello, Lockridge, and Gustafson Gluek) requested transfer to the District of Connecticut, and others (represented by Cuneo and the Garwin Gerstein & Fisher LLP firm) advocated for the Central District of California. Originating Counsel took the lead in briefing and arguing before the Panel for all plaintiffs in support of keeping the cases before this Court. AXG argued that the Northern District of Illinois was the natural forum because it was home to AXG's first-filed complaint, this Court had already become familiar with the issues, and Chicago is the geographic center of the case. Reply Supp. Pl. AXG Roofing, LLC's Subseq. Mot. Transfer, *Constr. Equip. Rental*, MDL No. 3152, ECF No. 67 (J.P.M.L. June 5, 2025). On August

13, 2025, the Panel agreed, granting AXG's petition and transferring all related actions to this Court. Transfer Order, *Constr. Equip. Rental*, ECF No. 103 (J.P.M.L. Aug. 13, 2025).

Between the filing of the AXG Complaint in April 2025 and the JPML's transfer order in August 2025, Originating Counsel consistently advanced the case. They participated in multiple conferences before this Court regarding case status and logistics; coordinated with defense counsel to manage early procedural issues; led the coordination of plaintiffs' counsel to ensure orderly litigation; and began the groundwork for discovery and case management, including sending preservation letters to Defendants and developing a proposed Time and Expense Protocol to ensure efficient management of the case to the class's benefit. Since centralization, Originating Counsel have continued to lead coordination efforts, ensuring the litigation moves forward efficiently.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 23(g) authorizes courts to appoint interim counsel to act on behalf of a putative class before certification, particularly when "overlapping, duplicative, or competing class suits are pending." Manual for Complex Litigation (Fourth) § 21.11 (2004); *see also Durocher v. Riddell, Inc.*, 2014 WL 12979800, at *1 (S.D. Ind. Aug. 29, 2014). Rule 23(g) directs courts to weigh: "(i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* 23(g)(1)(B).

Recent decisions in this District emphasize that these factors favor appointment of the counsel who first developed and advanced the claims. In *In re Frozen Potato Products Antitrust*

*Litigation*, Judge Cummings appointed firms that "have been involved in this litigation for the longest time period and have performed the most work in identifying and investigating potential claims[,]" finding they were "in a better position to represent the class fairly and adequately." No. 24-cv-11801, ECF No. 167, at 5 (N.D. Ill. Aug. 20, 2025). Similarly, in *In re Clearview AI, Inc., Consumer Privacy Litigation*, Judge Coleman emphasized that interim counsel should be the attorney who took "the lead in aggressively moving this litigation forward[,]" "spearheaded the early discovery and investigation[,]" and was "best . . . able to represent the interests of all of the class members." 2021 WL 916056, at *1-2 (N.D. Ill. Mar. 10, 2021).

## IV. ARGUMENT

### A. Originating Counsel Is Best Suited to Represent the Class.

The Rule 23(g) factors favor the appointment of Originating Counsel.

#### 1. Originating Counsel have shown they are best suited to serve as lead class counsel.

Originating Counsel have shown they are best suited to serve as lead class counsel through their work investigating and prosecuting the claims asserted. Courts routinely find that the firms that first investigated and filed a case have done the most to advance the litigation, recognizing that the process of drafting a complaint "requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken." Fed. R. Civ. P. 23(g) advisory committee's note (2003 amendment); *see also Wilcosky v. Amazon, Inc.*, 2022 WL 18937690, at *2-3 (N.D. Ill. May 16, 2022) (Valderrama, J.) (appointing first-filer that developed the case).

That principle carries special weight in antitrust litigation. Detecting collusion is notoriously difficult, *United States v. Vandebrake*, 679 F.3d 1030, 1033 (8th Cir. 2012), and scholarship suggests that "no more than 30%" of cartels are ever uncovered." Robert L. Lande & Joshua P. Davis, *Defying Conventional Wisdom: The Case for Private Antitrust Enforcement*, 48

GA. L. REV. 1, 35-36 (2013). Private attorneys therefore play a critical role in antitrust enforcement, but their work is enormously resource-intensive: interviewing witnesses, consulting with experts, and developing legal theories. Courts recognize this contribution (and incentivize future efforts) by appointing as lead counsel the firms that take on that risk and perform substantial early work. *See, e.g.*, *In re Bystolic Antitrust Litig.*, 2020 WL 6700830, at *1 (S.D.N.Y. Nov. 12, 2020) (noting originating firms spent over a year investigating).

The same reasoning applies here. Originating Counsel devoted hundreds of hours and substantial out-of-pocket expenses to investigating the alleged collusion and crafting the detailed AXG Complaint—without the benefit of any government probes or enforcement actions. By contrast, the later-filed "carbon copies" added nothing new of substance.[3] Consistent with precedent and public policy, the Court should appoint Originating Counsel—whose initiative and independent investigation made this litigation possible—as Interim Co-Lead Class Counsel.

**2. Originating Counsel and their firms have extensive litigation experience, including in antitrust class actions involving technology-enabled price fixing.**

Originating Counsel and their firms routinely prosecute complex, resource-intensive cases against well-funded defendants. They possess the expertise required to negotiate major settlements and the tenacity to take cases to trial when necessary.

Of particular significance here, Originating Counsel have been at the forefront of litigation involving technology-driven price-fixing, often referred to as "algorithmic price-fixing." Mr. Caplan (and the Berger Montague firm) and Ms. Fernández-Silber (and the Edelson firm) serve as

[3] Other counsel dismiss Berger Montague, Edelson, and Hausfeld as "so-called Originating Counsel." *See, e.g.*, DiPietro Br., ECF No. 105, at 4. But AXG Roofing and its counsel originated this case; later complaints, including those from DiCello Levitt and DiPietro, merely copied or diluted AXG's first-filed complaint.

co-leads (together with attorneys from Susman Godfrey LLP) in *MultiPlan*, which alleges an antitrust conspiracy among MultiPlan (an analytics-based pricing service similar to Rouse) and health insurance companies to pay healthcare providers below-market rates for out-of-network services. Likewise, Ms. Bojedla, Mr. Smith, and the Hausfeld firm serve as co-leads in *RealPage*, an action alleging that lessors of multifamily housing have engaged in a conspiracy to raise rents above competitive levels, including by using a common pricing software; Ms. Wallin, Mr. Walker, and the Berger Montague firm serve on the *RealPage* plaintiffs' steering committee.

Each of these algorithmic price-fixing cases involves thorny issues likely to also arise here: proving agreement through reliance on a shared pricing platform, establishing the middleman's role in facilitating coordination, disentangling collusive effects from normal market forces through complex econometric analysis, and demonstrating class-wide impact and damages. Given the specialized nature of these cases, Originating Counsel's highly relevant prior experience weighs strongly in favor of their appointment. *See, e.g.*, *Holcomb v. Hosp. Sisters Health Sys.*, 2017 WL 10543400, at *1 (C.D. Ill. Jan. 18, 2017) (noting counsel's particular experience in "ERISA class-action cases involving 'church plans'" weighed in favor of their appointment); *In re Forefront Data Breach Litig.*, 2022 WL 20690780, at *2 (E.D. Wis. Jan. 27, 2022) (finding counsel with "greater combined experience in handling complex litigation in the area of data security and privacy" was "best able to represent the interests of this class").

Other counsel suggest that they should be elevated to leadership because of their very long careers. However, this MDL is not a generic antitrust case—it is a cutting-edge technology-enabled price-fixing case. Originating Counsel have already been appointed by courts nationwide to lead similar cases. That recent and directly relevant experience is precisely what Rule 23(g) favors. The Originating Counsel team's attributes and experiences are described below and in the firm resumes

submitted herewith. *See* Exs. A-C.

**a. The Berger Montague Team**

Described by *Chambers & Partners* as "highly distinguished for the strength of its plaintiff-side work acting on monopoly matters and price-fixing, including an impressive track record in complex, high-profile class actions," Berger Montague boasts one of the largest and most experienced plaintiff-side antitrust departments in the country. It pioneered the antitrust class action and has been engaged in complex litigation for more than fifty years. This Court has previously appointed Berger Montague to a leadership role. *See In re Peregrine Fin. Grp. Customer Litig.*, No. 12-cv-5546, ECF No. 417 (N.D. Ill. June 23, 2015) (Ellis, J.) (appointing Berger Montague as co-lead counsel for the Settlement Class). The Berger Montague team is led by Zachary Caplan, Michaela Wallin, and Daniel Walker, and will be advised by Eric Cramer.

**Zachary Caplan** is a Shareholder in Berger Montague's Antitrust Department, where he focuses on complex antitrust class actions. He has held leading roles in major price-fixing MDLs, including *In re Generic Pharmaceuticals Pricing Antitrust Litigation* (E.D. Pa.), and currently serves as co-lead class counsel in *MultiPlan*. A former attorney in the Antitrust Division of the U.S. Department of Justice, he brings both government and private-sector experience to high-stakes cartel cases. In 2025, he was named to *Lawdragon*'s inaugural *Global Antitrust & Competition Lawyers Guide*, recognizing top practitioners worldwide, and he also serves on the planning committee for the Committee to Support the Antitrust Laws' ("COSAL") Leadership and Diversity Summit, which is dedicated to advancing and developing the next generation of antitrust lawyers.

**Michaela Wallin** is a Shareholder in Berger Montague's Antitrust and Employment Law practice groups, where she litigates antitrust class actions challenging price-fixing, as well as class

and collective actions challenging forced labor and wage violations. She currently serves on the plaintiffs' steering committee in *RealPage* and has played significant roles in cases that achieved major recoveries, including *In re Broiler Chicken Grower Antitrust Litigation* ($169 million in settlements) and *In re Opana ER Antitrust Litigation* ($145 million in settlements). Earlier in her career, Ms. Wallin clerked in the Southern District of New York and completed an Equal Justice Works Fellowship at the ACLU Women's Rights Project, where she challenged laws that penalized survivors of domestic violence—reflecting a career-long commitment to protecting vulnerable populations alongside her complex antitrust work.

**Daniel Walker** is a Shareholder in Berger Montague's Antitrust Department and head of the firm's Washington, DC office. He is co-lead counsel in several antitrust class actions and serves on the plaintiffs' steering committee in *RealPage*. He has played key roles in numerous successful price-fixing cases, including *In re Broiler Chicken Grower Antitrust Litigation*, which secured $169 million in settlements. Recognized by *Chambers & Partners*, *Super Lawyers*, and the American Antitrust Institute (for Outstanding Litigation Achievement in *Broiler Chicken Grower*), Mr. Walker brings extensive experience to complex antitrust litigation. Earlier in his career, he spent three years as an attorney at the Federal Trade Commission.

**Eric Cramer** is the Chairman of Berger Montague and one of the nation's leading plaintiffs' antitrust lawyers, with decades of experience litigating price-fixing cases that have recovered billions of dollars for classes. He has served as lead or co-lead counsel in numerous landmark antitrust MDLs.

**b. The Edelson Team**

Edelson's attorneys "are experienced and respected members of the plaintiffs' class action bar" who can be trusted to discharge their duties faithfully. *Aranda v. Caribbean Cruise Line, Inc.*,

2017 WL 818854, at *4 (N.D. Ill. Mar. 2, 2017). Over the last decade, the firm has led and litigated scores of cases, securing settlements and verdicts exceeding $45 billion. This includes over $5 billion in home equity credit lines restored to consumers after the 2000s housing collapse, *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-04152 (N.D. Cal.); a $650 million settlement with Facebook for violating consumer privacy, *In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-3747 (N.D. Cal.); and establishing that online gaming can constitute illegal gambling, *Kater v. Churchill Downs, Inc.*, 886 F.3d 784 (9th Cir. 2018), resulting in recoveries totaling $651 million to date. The Edelson team is led by Natasha Fernández-Silber and Sarah LaFreniere.

**Natasha Fernández-Silber** is an experienced antitrust litigator who leads Edelson's Antitrust practice group and spearheaded Edelson's investigation into the construction rental price-fixing cartel. She serves as Co-Lead Class Counsel in *MultiPlan*, an algorithmic price-fixing case against major insurers, where she recently argued successfully against dismissal. She has also held leadership roles in *In re Inclusive Access Course Materials Antitrust Litigation* (S.D.N.Y.) and *In re Juul Labs, Inc. Antitrust Litigation* (N.D. Cal.). In addition, she is Special Acting Attorney General for Michigan in its *parens patriae* action against PBMs Express Scripts and Prime, and represents drug-purchaser plaintiffs in *In re Respimat Pharmaceuticals Antitrust Litigation* (D. Mass.), where she again defeated a motion to dismiss. Earlier in her career, she was part of the trial team in *In re Ranbaxy Generic Drug Application Antitrust Litigation* (D. Mass.), which secured a $340 million settlement for direct-purchaser plaintiffs.

**Sarah LaFreniere** is a partner with significant experience in both cartel conduct and monopolization schemes. In *PHHHOTO Inc. v. Meta Platforms, Inc. (F/K/A Facebook, Inc.)*, No. 1:21-cv-06159 (E.D.N.Y.), she represented an upstart photo app challenging Facebook's monopolization of the social media market. She was part of the team in *In re Foreign Exchange*

*Benchmark Rates Antitrust Litigation*, No. 13-cv-07789 (S.D.N.Y.) that recovered over $2.3 billion for class members. Ms. LaFreniere also represented class members in *In re Diisocyanates Antitrust Litigation*, No. 2:18-mc-1001 (W.D. Pa.), where she led discovery efforts. In 2018, Ms. LaFreniere received the American Antitrust Institute's Award for Outstanding Antitrust Litigation Achievement by a Young Lawyer.

**c. The Hausfeld Team**

Hausfeld is widely recognized as one of the nation's leading plaintiffs' antitrust firms. Since its founding in 2008, the firm has served in leadership roles in more than 85 antitrust and complex class actions, winning landmark trials, securing precedent-setting rulings, and recovering billions of dollars for classes. *Chambers & Partners* ranks Hausfeld in its top Band 1 for nationwide plaintiffs' antitrust firms—one of just four in the country—while Global Competition Review calls it "one of - if not the - top Plaintiffs' antitrust firm in the U.S.," and Legal 500 consistently ranks it among the top five. In 2025, for the seventh straight year, Hausfeld was named a leading claimant firm for antitrust recoveries, having secured 132 settlements totaling more than $8.6 billion between 2009 and 2024. The Hausfeld team is led by Gary I. Smith, Jr. and Swathi Bojedla.

**Gary I. Smith, Jr.** is a partner in Hausfeld's San Francisco office focusing on antitrust litigation. He serves as co-lead counsel in *In re Broiler Chicken Grower Antitrust Litigation*, where he certified a class of poultry farmers and secured $169 million in settlements, and *In re LIBOR-Based Financial Instruments Antitrust Litigation* (S.D.N.Y.), where he represents a certified class of investors and has recovered $781 million to date. Collectively, he has helped recover well over a billion dollars for plaintiffs across industries including healthcare, finance, transportation, and agriculture, and also co-leads litigation against 40+ defendants in *RealPage*. Recognized by

*Legal500* as "an outstanding antitrust lawyer," Mr. Smith has also been honored by the American Antitrust Institute, *Super Lawyers*, *Best Lawyers*, *Law360*, and *Benchmark Litigation*.

**Swathi Bojedla** is a partner at Hausfeld with fourteen years of experience in class action antitrust litigation and more than $3.7 billion in settlements secured for her clients. She played a lead role in *In re Blue Cross Blue Shield Antitrust Litigation* (N.D. Ala.), achieving a $2.67 billion settlement, and in *O'Bannon v. NCAA* (N.D. Cal.), where she won historic injunctive relief at trial. She now serves as court-appointed co-lead counsel in the pioneering algorithmic price-fixing case *RealPage*, where she and her team have already reached settlements with over 20 defendants. Recognized by *Chambers* as "a brilliant antitrust litigator," Ms. Bojedla has also received awards from the American Antitrust Institute and *Global Competition Review* and has been named to Benchmark's 40 & Under List, *Super Lawyers*, and *Lawdragon*'s 500 Leading Financial Lawyers.

**3. Originating Counsel are uniquely positioned to commit the resources needed while ensuring efficient prosecution.**

If appointed, Originating Counsel will devote the substantial resources required to prosecute this litigation. Berger Montague, Edelson, and Hausfeld together employ hundreds of attorneys nationwide, with offices in Chicago (where Edelson is headquartered and which is the geographic center of this case), Philadelphia, San Francisco, Minneapolis, New York, Washington, D.C., and elsewhere. These firms have the financial strength to invest millions of dollars in expert analysis, discovery management, and trial preparation.

Equally important, Originating Counsel's proposed three-firm structure ensures those resources will be deployed with efficiency. The collective experience and deep benches of these firms mean the Class will benefit from sophisticated and zealous advocacy without the duplication and cost that often accompany executive or steering committees of additional law firms. Courts have increasingly rejected multilayered leadership structures for this reason. *See,*

*e.g.*, *Leifer v. Live Nation Ent., Inc.*, No. 24-cv-03994, ECF No. 48 (S.D.N.Y. Sept. 9, 2024) (declining to appoint executive committee because it "can lead to substantially increased costs and unnecessary duplication of efforts"); *In re Enzo Biochem Data Sec. Litig.*, 2023 WL 6385387, at *3 (E.D.N.Y. Sept. 29, 2023); *Bystolic*, 2020 WL 6700830, at *2; *MultiPlan*, No. 24-cv-6795, ECF Nos. 146 & 155 (N.D. Ill. Oct. 15, 2024) (selecting three-firm co-lead structure over competing slate that included a steering committee of numerous firms).[4]

Other plaintiffs and their firms agree. Four have submitted declarations expressly supporting Originating Counsel's proposed three-firm leadership structure, recognizing that this case will be best led by a truly diverse and experienced leadership team. *See* Exs. D-G (Declarations of Supporting Plaintiffs and Firms). To reinforce that commitment, Originating Counsel have also developed a Time and Expense Protocol requiring contemporaneous timekeeping and oversight, ensuring the litigation is conducted with transparency, discipline, and without waste. *See* Ex. H.

Originating Counsel uncovered and developed this case, have advanced it further than any other firm, and are prepared to commit the resources necessary to see it through. Their demonstrated initiative, relevant expertise, and lean leadership proposal make them best positioned to represent the Class under Rule 23(g).

## V. CONCLUSION

For all these reasons, Plaintiff respectfully requests that the Court appoint Originating Counsel as Interim Co-Lead Class Counsel

[4] DiPietro's request to appoint Ms. Liebenberg as "Settlement Counsel" is premature. Courts typically consider such appointments only after discovery or motion practice, when settlement issues are concrete. At this early stage, adding a settlement-only role would create inefficiency, and if later warranted, such a proposal should come from among Originating Counsel.

Dated: August 28, 2025

Respectfully submitted,

_/s/ Natasha J. Fernández-Silber_
**EDELSON PC**
Natasha J. Fernández-Silber*
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
nfernandezsilber@edelson.com
*Admitted in New York and Michigan

Sarah R. LaFreniere
Brandon Baum-Zapeda*
1255 Union St. NE, Suite 850
Washington, DC 20002
Tel: (202) 270-4777
Fax: (312) 589-6378
slafreniere@edelson.com
bbaum-zepeda@edelson.com
*not admitted to practice in DC; supervised by principals of the firm.

**BERGER MONTAGUE PC**
Eric L. Cramer
Zachary D. Caplan
Michaela Wallin
Sarah R. Zimmerman
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bergermontague.com
zcaplan@bergermontague.com
mwallin@bergermontague.com
szimmerman@bergermontague.com

Daniel J. Walker
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Tel: (202) 559-9740
dwalker@bergermontague.com

**HAUSFELD LLP**
Swathi Bojedla
1200 17th Street NW, Suite 600
Washington, DC 20036
Tel: (202) 540-7200
sbojedla@hausfeld.com

Gary I. Smith, Jr.
580 California Street, 12th Floor
San Francisco, CA 94101
Tel: (415) 633-1908
gsmith@hausfeld.com

Gisela Rosa
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
zrosa@hausfeld.com

*Counsel for Plaintiff AXG Roofing, LLC and the Proposed Class*