UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: CONSTRUCTION EQUIPMENT RENTAL ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 1:25-cv-03487<br>MDL No. 3152<br><br>Hon. Sara L. Ellis |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT RB GLOBAL, INC.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. SUMMARY OF RELEVANT FACTS ................................................................................ 2

    A. The Relationship Between RB Global and Rouse ................................................... 2

    B. The Alleged Conspiracy Concerning RRI ................................................................ 2

III. LEGAL STANDARD ........................................................................................................... 4

IV. ARGUMENT ........................................................................................................................ 4

    A. Plaintiffs Fail to Plead Any Involvement by RB Global in the Alleged Conspiracy. .................................................................................................................. 5

    B. Group Pleading Does Not Save Plaintiffs' Deficient Claims. ................................. 7

    C. RB Global is Not Liable for the Actions of Its Rouse Subsidiaries ........................ 8

        1. RB Global is a Separate Corporate Entity from Rouse ............................... 8

        2. No Exceptions Apply For Disregarding the Corporate Form. .................... 9

V. CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Allan & Assocs. Ltd.*,
  445 F. Supp. 3d 42 (N.D. Cal. 2020) ..................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................................4

*Atkins v. Hasan*,
  No. 15 CV 203, 2015 WL 3862724 (N.D. Ill. June 22, 2015) ..............................................8

*In re ATM Fee Antitrust Litig.*,
  768 F. Supp. 2d 984 (N.D. Cal. 2009) ................................................................................7, 8

*Bank of Am., N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ..................................................................................................7

*Bankhead v. Wintrust Fin. Corp.*,
  2023 WL 6290548 (N.D. Ill. Sept. 27, 2023) .........................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................................2, 4

*Brennan v. Concord EFS, Inc.*,
  369 F. Supp. 2d 1127 (N.D. Cal. 2005) .................................................................................6

*Bright v. Roadway Servs.*,
  846 F. Supp. 693 (N.D. Ill. 1994) .......................................................................................6, 9

*Butler v. Adoption Media, LLC*,
  486 F. Supp. 2d 1022 (N.D. Cal. 2007) ..........................................................................10, 11

*In re Cal. Bail Bond Antitrust Litig.*,
  511 F. Supp. 3d 1031 (N.D. Cal. 2021) .................................................................................5

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
  227 F.R.D. 313 (C.D. Cal. 2004) ..........................................................................................11

*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*,
  2017 WL 4269005 (N.D. Ill. Sept. 26, 2017) .........................................................................7

*Hansen v. Nw. Univ.*,
  No. 24 C 9667, 2025 WL 2731378 (N.D. Ill. Sept. 24, 2025) ...............................................4

*In re Int. Rate Swaps Antitrust Litig.*,
  No. 16-MC-2704 (PAE), 2018 WL 2332069 (S.D.N.Y. May 23, 2018) .............................7, 8

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
  476 F. Supp. 2d 913 (N.D. Ill. 2007), *aff'd in part, vacated in part*, 529 F.3d
  371 (7th Cir. 2008)..............................................................................................................12

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
  529 F.3d 371 (7th Cir. 2008) .............................................................................................11

*Laborers' Pension Fund v. Lay-Com, Inc.*,
  580 F.3d 602 (7th Cir. 2009) .............................................................................................12

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
  2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019) ...................................................................10

*Menominee Indian Tribe of Wis. v. Thompson*,
  161 F.3d 449 (7th Cir. 1998) ...............................................................................................2

*In re Mexican Gov't Bonds Antitrust Litig.*,
  412 F. Supp. 3d 380 (S.D.N.Y. 2019).................................................................................5

*Motorola Mobility LLC v. AU Optronics Corp.*,
  775 F.3d 816 (7th Cir. 2015) ...............................................................................................9

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
  630 F. Supp. 3d 968 (N.D. Ill. 2022) ...............................................................................5, 9

*In re Pa. Title Ins. Antitrust Litig.*,
  648 F. Supp. 2d 663 (E.D. Pa. 2009) ..................................................................................5

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ...........................................................................................12

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) ...............................................................................................5

*Shuffle Tech Int'l, LLC v. Sci. Games Corp.*,
  No. 15 C 3702, 2015 WL 5934834 (N.D. Ill. Oct. 12, 2015) ...........................................10

*Sonora Diamond Corp. v. Superior Ct.*,
  83 Cal. App. 4th 523 (Cal. Ct. App. 2000) ......................................................................11

*Successor Agency to Former Emeryville Redevelopment Agency & City of
  Emeryville v. Swagelok Co.*,
  No. 3:17-CV-00308-WHO, 2024 WL 3952587 (N.D. Cal. Aug. 27, 2024) ...........................12

*In re Text Messaging Antitrust Litig.*,
    630 F.3d 622 (7th Cir. 2010) ................................................................................................4

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998) ............................................................................................................8, 10

I.      **INTRODUCTION**

Defendant RB Global, Inc. ("RB Global") is a holding company with no employees or material assets other than shares of its subsidiaries. Plaintiffs' only reason for naming RB Global as a defendant in this case is that it is the ultimate parent of defendants Rouse Services, LLC and Rouse Analytics, LLC (together, "Rouse"), the operators of the Rouse Rental Insights ("RRI") benchmarking product at issue in this litigation. Accordingly, RB Global joins in Defendants' Joint Motion to Dismiss (the "Joint Motion"), and moves separately for dismissal because Plaintiffs cannot plausibly allege (a) that RB Global has itself entered into or participated in any unlawful agreement or conspiracy, or (b) any basis to hold RB Global liable for the supposed actions of its Rouse subsidiaries. Thus, no matter the Court's decision on the Joint Motion, RB Global should be dismissed from this case.

There are only *seven* paragraphs in Plaintiffs' 70-page, 272-paragraph long Consolidated Amended Class Action Complaint (the "Complaint" or "CAC") that mention RB Global.[1] CAC ¶¶ 1, 25, 26, 27, 75, 76, 77. Of those limited allegations, none contains facts plausibly suggesting that RB Global had any role in the alleged antitrust conspiracy relating to RRI. RB Global is not alleged to be a construction equipment rental company; it is not alleged to have entered into a contract with any construction equipment rental company, let alone with any Rental Company Defendant; and it is not alleged to have created or operated a benchmarking service for construction equipment rentals.

Plaintiffs attempt to rely on allegations that RB Global is the ultimate parent company of the Rouse defendants, which operate RRI. But it is well-established that a parent-subsidiary relationship is insufficient to state an antitrust claim. Nor have Plaintiffs plausibly alleged facts to

---

[1] This includes references to RB Global under its former corporate name, Ritchie Bros.

1

demonstrate the requisite control to permit the Court to hold RB Global liable under any exception for imputing a subsidiary's conduct to its parent. The Court should dismiss all claims against RB Global with prejudice.

## II. SUMMARY OF RELEVANT FACTS

### A. The Relationship Between RB Global and Rouse

RB Global is a "holding company with no material assets" of its own "other than the shares of its subsidiaries." RB Global, Inc., Form 10-K (Feb. 26, 2025) ("2024 Annual Report") at 31.[2] RB Global has more than 80 subsidiaries, including Rouse, and its operating subsidiaries are the only employers of the 7,800 full-time and 890 part-time employees under the greater RB Global umbrella. *Id*. at 4, 9 & Ex. 21.1 ("List of Company Subsidiaries"); CAC ¶¶ 25, 27.

RB Global, then known as Ritchie Bros., acquired Rouse in December 2020. CAC ¶¶ 75, 77. Rouse was established in 1920 and operated primarily as an auctioneer of construction equipment until the 2000s, when it expanded to providing valuation, appraisal, and asset-management services for equipment owners and lenders. *Id*. ¶¶ 65, 75. In 2011, Rouse launched the rental metrics benchmarking service that is now known as RRI. *Id*. ¶ 68. Rouse operates out of its headquarters in Beverly Hills, California, while RB Global has its U.S. headquarters in Westchester, Illinois. *Id*. ¶¶ 25, 27.

### B. The Alleged Conspiracy Concerning RRI

Plaintiffs allege that construction equipment rental companies in the United States,

---

[2] The 2024 Annual Report is publicly available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001046102/000162828025008201/rba-20241231.htm. Plaintiffs have incorporated RB Global's Annual Report into the Complaint by quoting it at CAC ¶¶ 25–26. In assessing a complaint's plausibility, a court is "entitled to take notice of the full contents of the published articles referenced in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.13 (2007); *see also Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (internal citation omitted).

including the Rental Company Defendants, "conspired with and through Rouse, a wholly owned subsidiary of RB Global, to fix, stabilize, and maintain rental prices industry-wide using . . . [RRI]." *Id*. ¶ 1. But the Complaint is devoid of any allegation that RB Global itself was a participant in that alleged conspiracy. Plaintiffs instead make the boilerplate, conclusory statement that RB Global "controls" and "directs" Rouse's operation of RRI, without any description of what exactly RB Global does that could constitute such control. *Id.* ¶ 26. On the contrary, as the Complaint acknowledges, Rouse continues to operate post-acquisition from a separate office location (*id.* ¶ 27); Rouse is a "distinct reporting unit" of RB Global (*id.* ¶ 26); and Rouse reaches customers through its own website separate from RB Global's website (*id.* ¶¶ 26, 27[3]). Plaintiffs allege that RB Global and Rouse mutually benefited from RB Global's acquisition of Rouse, including based on vague assertions of data-sharing, but provide no explanation or context as to how this addresses RB Global's purported role in the alleged conspiracy. CAC ¶¶ 75–76. Plaintiffs themselves allege that the acquisition did not even take place until 2020—*nine years after* the purported start of the conspiracy in 2011. *Id*. ¶¶ 68, 75, 117.

Beyond these limited allegations specific to RB Global, Plaintiffs make several allegations improperly referring to "Defendants" as a whole without distinguishing them from each other. *E.g.*, *id.* ¶¶ 114, 116, 154, 158, 179. These allegations contain no specific facts tying the conduct alleged to RB Global. Nor does it make sense for those allegations to apply to RB Global, a holding company with no employees or operations of its own.

---

[3] Plaintiffs quote from RB Global's website in CAC ¶ 26: https://rbglobal.com/insights/rouse-rental-insights. As shown on the navigation menu of that website, RB Global, through its subsidiaries, offers numerous "Insights," "Services," "Transaction Solutions," "Industry Solutions," and "Brands." In CAC ¶ 27, Plaintiffs quote from the separate Rouse website, which only covers Rouse's products: https://www.rouseservices.com/about. Both materials are incorporated into the Complaint.

### III. LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*.

To state a claim under Section 1 of the Sherman Act, Plaintiffs must allege facts that show: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury." *Hansen v. Nw. Univ.*, No. 24 C 9667, 2025 WL 2731378, at *7 (N.D. Ill. Sept. 24, 2025) (internal citation omitted). This requires pleading "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* (internal citation omitted). Particularly in antitrust cases, the misapplication of the standard described in *Twombly* and *Iqbal* can "create irrevocable [and] unjustifiable harm to the defendant" due to "the expense of responding to bulky, burdensome discovery." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010).

### IV. ARGUMENT

Plaintiffs have no plausible basis to name RB Global as a Defendant. They (1) fail to plead facts demonstrating RB Global's involvement in the alleged conspiracy, (2) engage in improper "group pleading," and (3) improperly attempt to impose liability on RB Global for the alleged conduct of its Rouse subsidiaries.

4

### A. Plaintiffs Fail to Plead Any Involvement by RB Global in the Alleged Conspiracy.

The limited and conclusory allegations against RB Global do not come close to stating a plausible claim that RB Global had a role in the alleged conspiracy. Courts consistently require plaintiffs to sufficiently plead the involvement of *each* named defendant in an antitrust conspiracy. *See In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 630 F. Supp. 3d 968, 984 (N.D. Ill. 2022) (requiring plaintiffs to "allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision to join it") (quoting *Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877, 900 (N.D. Ill. 2009)).[4] This requirement to separately identify each defendant's involvement applies with equal force to parent companies and their subsidiaries. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015) (noting "[t]he fact that two separate legal entities may have a corporate affiliation does not alter the pleading requirement") (citing *In re Aluminum Warehousing Antitrust Litig.*, No. 13–md–2481 (KBF), 2015 WL 1344429, at *2 (S.D.N.Y. Mar. 23, 2015)). A parent company can be held liable "only when it was directly involved in the anticompetitive conduct." *Outpatient*, 630 F. Supp. 3d at 991.[5]

Here, there are no facts plausibly alleging that RB Global directly and independently participated in the alleged conspiracy. Instead, the scant allegations in the Complaint that mention RB Global are either conclusory boilerplate or merely descriptions of RB Global's corporate history. Plaintiffs never allege that RB Global entered into any agreement, explicit or tacit, with Rouse or

---

[4] *See also In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1047 (N.D. Cal. 2021) (same); *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388 (S.D.N.Y. 2019) ("An antitrust complaint that fails to connect each or any individual entity to the overarching conspiracy . . . cannot ordinarily survive a motion to dismiss.").

[5] *See also In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009) ("[T]o state a claim against parent corporations, plaintiffs must set forth facts establishing the parent corporations' direct and independent participation in the alleged conspiracy.").

any Rental Company Defendant, regarding prices for construction equipment rentals. Indeed, Plaintiffs do not allege that RB Global entered into an agreement with a Rental Company Defendant about any topic at all. There are not even allegations that RB Global ever communicated with any Rental Company Defendant on any subject, much less with respect to the pricing of construction equipment rentals.

Nor do Plaintiffs allege any facts suggesting that RB Global took any actions in connection with Rouse's provision of RRI to the Rental Equipment Defendants. The Complaint does not allege that RB Global had any involvement in the operation of RRI, besides a single boilerplate assertion that RB Global somehow "controls" and "directs" Rouse's operation of RRI simply by virtue of its corporate ownership of Rouse. CAC ¶ 26; *see Bright v. Roadway Servs.*, 846 F. Supp. 693, 700 (N.D. Ill. 1994) (rejecting conclusory allegation that parent company "owns and controls" subsidiary as "insufficient as a matter of law" to state a claim against parent); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (finding allegations that holding company "exercised such dominion and control" over its subsidiaries to be liable for the acts of those subsidiaries were "simply legal conclusions without supporting fact"). Nor does the Complaint allege that RB Global received the rental data of any Rental Company Defendant, and instead only makes a vague assertion of some undefined data-sharing between Rouse and RB Global, with no explanation how such information sharing works or how it relates to the alleged conspiracy regarding RRI. CAC ¶¶ 75–76. And the Complaint acknowledges that RB Global did not even gain ownership of Rouse until 2020, almost a decade after the alleged conspiracy purportedly began in 2011. *Id.* ¶¶ 68, 75, 117. In short, Plaintiffs' claims against RB Global contain no factual support plausibly alleging that RB Global did anything to enter the alleged conspiracy.

Without any factual allegations as to RB Global's individual participation in the alleged conspiracy, Plaintiffs cannot proceed with their conclusory conspiracy claims against RB Global. *See In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 1002 (N.D. Cal. 2009) (dismissing complaint as to each of the "corporate parent Defendants" because "[t]here are no allegations in the complaint that tie the [parent] holding companies to the alleged conspiracy"); *Bankhead v. Wintrust Fin. Corp.*, 2023 WL 6290548 at *6 (N.D. Ill. Sept. 27, 2023) (dismissing complaint where plaintiff "largely fail[ed] to differentiate between" parent holding company and its subsidiary by referring to them "collectively"); Order Granting Motion to Dismiss, *Dai v. SAS Inst. Inc.*, No. 4:24-cv-02537-JSW (N.D. Cal. Mar. 21, 2025), ECF No. 129 at 1–3 (attached as Exhibit A) (dismissing parent corporation from antitrust suit where plaintiffs alleged that subsidiary software firm engaged in price-fixing but failed to allege any involvement by parent).

### B. Group Pleading Does Not Save Plaintiffs' Deficient Claims.

Unable to allege specific conduct by RB Global to support their claims, Plaintiffs hide behind group pleading against all "Defendants." *E.g.*, CAC ¶¶ 114, 116, 154, 158, 179. Plaintiffs' allegations contain no specific facts tied to RB Global. Nor could they, as RB Global is neither a user nor an operator of the RRI product at issue in this litigation. Even if group pleading were somehow proper, these allegations cannot fairly relate to RB Global, and such pleading is insufficient as a matter of law. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (holding that complaints based on "a theory of collective responsibility must be dismissed"); *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, 2017 WL 4269005, at *1–2 (N.D. Ill. Sept. 26, 2017) (dismissing claims as to corporate defendants because complaint "lumps [them] together" and "engages in impermissible group pleading"); *In re Int. Rate Swaps Antitrust Litig.*, No. 16-MC-2704 (PAE), 2018 WL 2332069, at *15 (S.D.N.Y. May 23, 2018) (setting aide

allegations regarding conduct of "the Dealer Defendants" as a general collective bloc because they constituted "impermissible group pleading").

To the extent Plaintiffs purport to lump together Rouse and RB Global through their defined term "Rouse," *see* Complaint at 1, this is likewise improper group pleading. *See In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d at 1002 (rejecting plaintiffs' attempt to "merely lump together allegations against the holding company and its subsidiary" through a defined term because "[t]here are no allegations in the complaint that tie the [parent] to the alleged conspiracy"). Plaintiffs cannot define their way out of the requirement to demonstrate plausibly that each defendant participated in the alleged conspiracy.

Antitrust plaintiffs must allege that *each* defendant engaged in anticompetitive conduct. These group-pled allegations say nothing about RB Global's individual and direct participation in the alleged conspiracy, do not provide RB Global with fair notice of the claims against it, and fail to state an antitrust claim. *See Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015) (finding that group pleading does not "pass muster" under Federal Rule 8 because "[d]etails about who did what are not merely nice-to-have features of an otherwise-valid complaint . . . a claim to relief *must* include such particulars") (original emphasis).

    C.    **RB Global is Not Liable for the Actions of Its Rouse Subsidiaries.**

        1.    <u>RB Global is a Separate Corporate Entity from Rouse</u>.

Plaintiffs cannot rely on RB Global's status as the parent entity of Rouse to support a claim against RB Global. A parent company is not liable for the acts of its subsidiary merely by virtue of its corporate relationship with the subsidiary. *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (internal quotations and citation

8

omitted); *Outpatient*, 630 F. Supp. 3d at 991 ("Normally, a parent company cannot be held liable for the acts of its subsidiaries.").

Plaintiffs acknowledge RB Global's corporate separateness from Rouse. RB Global is "a holding company with no material assets other than the shares of its subsidiaries." 2024 Annual Report at 31. In addition, Plaintiffs admit that Rouse's business is its own reporting unit, "distinct" from RB Global and RB Global's other subsidiaries. CAC ¶ 26.

2. No Exceptions Apply For Disregarding the Corporate Form.

The Complaint is devoid of any factual allegations permitting the Court to impute Rouse's conduct to RB Global. "American law does not collapse parents and subsidiaries" and instead "insist[s]" that "corporate formalities should be respected unless one of the recognized justifications for piercing the veil, or otherwise deeming a parent and a subsidiary one, is present." *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 820 (7th Cir. 2015). There only are two exceptions that permit courts to impose liability on a parent for its subsidiary's conduct: (1) "when the parent is directly involved in the subsidiary's wrongful activities" or (2) "where the conditions for piercing the corporate veil are satisfied." *Outpatient*, 630 F. Supp. 3d at 991. Neither applies here.

**No Direct Involvement.** Plaintiffs have not alleged that RB Global exercises sufficient control over Rouse to have been directly involved in Rouse's allegedly wrongful activities. A parent company's direct involvement can be shown where the parent "directed, controlled, or encouraged its subsidiary's participation in the scheme." *Outpatient*, 630 F. Supp. 3d at 991.

Here, all Plaintiffs can muster is a boilerplate allegation that RB Global "controls" and "directs" Rouse's operation of RRI, based solely on the fact that it wholly owns Rouse. CAC ¶ 26; *see Roadway Servs.*, 846 F. Supp. at 700 (rejecting conclusory allegation that parent company "owns and controls" subsidiary as "insufficient as a matter of law" to state a claim against parent).

9

There are no factual allegations that RB Global instructed or encouraged Rouse to take any actions whatsoever related to RRI.

Nor do RB Global's public statements about Rouse's successes or the general benefits of its acquisition (CAC ¶¶ 75–76) constitute direct involvement in its subsidiaries' conduct. That an acquisition promotes both parties' growth is unremarkable and does not suggest any agreement to conspire. *See Bestfoods*, 524 U.S. at 72 ("Activities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability."); *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 2019 WL 1331830, at *38 (S.D.N.Y. Mar. 25, 2019) (allegations that owner regarded company as a "valuable asset" due to supracompetitive prices stemming from allegedly anticompetitive agreements did not support inference that owner independently participated in alleged misconduct).

**No Piercing of the Corporate Veil.** The Complaint contains no allegations even remotely suggesting the lack of corporate separation required to render Rouse an "alter ego" of RB Global.

To invoke the alter ego doctrine under California law,[6] a plaintiff must establish: (1) "a unity of interest and ownership between the corporation and its equitable owner such that the separate personalities of the corporation and the shareholder do not really exist"; and (2) "that there will be an inequitable result if the acts in question are treated as those of the corporation

---

[6] "Veil-piercing claims are governed by the law of the state of the corporation whose veil is to be pierced," meaning the entity's state of incorporation. *Shuffle Tech Int'l, LLC v. Sci. Games Corp.*, No. 15 C 3702, 2015 WL 5934834, at *6 (N.D. Ill. Oct. 12, 2015). Here, Rouse is incorporated in and has its principal place of business in California. CAC ¶ 27.

alone." *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1066 (N.D. Cal. 2007).[7] To determine whether a Plaintiff has alleged these elements, Courts consider "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538–39 (Cal. Ct. App. 2000) (internal quotations omitted); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 326 (C.D. Cal. 2004) (similar).

Here, there are no allegations in the Complaint concerning the majority of these factors. There are no allegations concerning commingling of funds and assets, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership, and use of one as a mere shell or conduit for the affairs of the other. The only factor even arguably addressed in the Complaint is the use of the same offices and employees, and the facts alleged demonstrate that Rouse is *not* the alter ego of RB Global:

- Rouse has its office and headquarters in Beverly Hills, California, while RB Global is a Canadian company with its U.S. headquarters in Westchester, Illinois (CAC ¶¶ 25, 27); and

- Rouse has its own employees (*see id.* ¶¶ 127, 135–38, 170 (quoting current or former Rouse employees)), while RB Global is a holding company with no employees of its own (2024 Annual Report at 4, 9, 31).

The lack of overlap in offices, employees, and contracts between RB Global and Rouse is an important consideration that supports dismissal here. For example, in *Greenspan v. LADT,*

---

[7] While California law governs, Illinois law is consistent. In Illinois, veil piercing is permitted "only when there is such unity of interest and ownership that the separate personalities of the corporation and the individual or other corporation no longer exist, and when adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378-79 (7th Cir. 2008) (cleaned up and citations omitted). "Piercing the corporate veil is not favored and in general, courts are reluctant to do so. Accordingly, a party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a dummy or sham for another person or entity." *Id.*

11

*LLC*, the court reversed the trial court's alter ego ruling for failure to consider relevant evidence that the subsidiary entity "never had any employees." 191 Cal. App. 4th 486, 527, 121 Cal. Rptr. 3d 118, 150 (Cal. Ct. App. 2010). In contrast, courts have refused to find alter ego liability when the subsidiary has numerous employees and is able to operate independently. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069–74 (9th Cir. 2015) (holding that subsidiary was not an alter ego of its parent where the subsidiary employed "over a thousand employees," notwithstanding that some subsidiary employees reported to the parent's supervisors on a "dotted-line" basis); *see also Successor Agency to Former Emeryville Redevelopment Agency & City of Emeryville v. Swagelok Co.*, No. 3:17-CV-00308-WHO, 2024 WL 3952587 (N.D. Cal. Aug. 27, 2024) (declining to pierce corporate veil of a subsidiary where subsidiary had thousands of its own employees); *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42 (N.D. Cal. 2020) (rejecting alter ego liability where there were no shared employees and no shared office space).[8]

There are no other allegations that would permit this Court to disregard the corporate separateness of RB Global and Rouse. Rather, the Complaint contains facts demonstrating that Rouse operates independently from RB Global:

- Rouse enters into contracts with construction equipment rental companies to provide RRI (*e.g.*, CAC ¶¶ 161, 179), while there are no allegations that RB Global is a party to any contracts related to RRI;

- Rouse has been in operation since 1920, and Rouse has been operating the RRI product specifically since 2011—nearly a decade before RB Global acquired Rouse (*id.* ¶¶ 68, 75, 117);

---

[8] Similarly, under Illinois law, courts have considered the number of employees as a relevant factor in deciding veil-piercing. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 476 F. Supp. 2d 913, 937–38 (N.D. Ill. 2007), *aff'd in part, vacated in part*, 529 F.3d 371 (7th Cir. 2008) (subsidiary was not parent's alter ego because it "engaged in corporate formalities [and] had other officers and employees"); *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 611 (7th Cir. 2009) (noting that the subsidiary "had assets and employees and contracts" on its own—a factor weighing against piercing the corporate veil).

12

- Rouse and RB Global have separate websites marketing different services (*id.* ¶¶ 26, 27; *supra* n.5); and

- Rouse is a "distinct reporting unit" of RB Global (*id.* ¶ 26).

Because Plaintiffs have not alleged facts plausibly demonstrating either direct involvement or veil piercing, Plaintiffs have not alleged a claim against RB Global based on any purported conduct by Rouse.

## V. CONCLUSION

The Complaint contains no allegations about RB Global's involvement in the alleged conspiracy. Plaintiffs' reliance on group pleading is improper and makes no sense when applied to RB Global. And Plaintiffs cannot impute liability to RB Global merely because it is the ultimate corporate parent of Rouse. This Court should dismiss all claims against RB Global with prejudice.

Dated: January 9, 2026

Respectfully submitted,

By */s/ Michael W. Scarborough*
Michael W. Scarborough (*pro hac vice*)
Dylan I. Ballard (*pro hac vice*)
**VINSON & ELKINS LLP**
555 Mission Street
Suite 2000
San Francisco, CA 94105
Tel: (415) 979-6900
Fax: (415) 651-8786
mscarborough@velaw.com
dballard@velaw.com

Stephen M. Medlock
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave., N.W.
Suite 500 W
Washington, D.C. 20037
Tel: (202) 639-6500
Fax: (202) 639-6604
smedlock@velaw.com

Nicole L. Castle (*pro hac vice*)
**VINSON & ELKINS LLP**

13

1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 237-0000
Fax: (212) 237-0100
ncastle@velaw.com

*Counsel For Defendants*
*RB Global, Inc., Rouse Services, LLC,*
*and Rouse Analytics, LLC*

14