**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: CONSTRUCTION EQUIPMENT RENTAL ANTITRUST LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Case No. 1:25-cv-03487<br>MDL No. 3152<br><br>Hon. Sara L. Ellis |

**MEMORANDUM OF LAW IN SUPPORT OF**
**EQUIPMENTSHARE.COM INC.'S RULE 12(b)(6) MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

    I.  The Only Substantive Allegation Directed to EquipmentShare Establishes that the Company Did Not Join Any Conspiracy. ............................................................... 4

    II.  Plaintiffs Cannot State a Claim Against EquipmentShare By Group Pleadings Directed Against the "Rental Company Defendants." .......................................... 6

CONCLUSION ........................................................................................................................ 9

i

**INTRODUCTION**

The Consolidated Amended Class Action Complaint ("CAC") contains no well-pled facts plausibly suggesting that Defendant EquipmentShare.com Inc. ("EquipmentShare") participated in any conspiracy involving Rouse's software. Despite the CAC's length, only a single paragraph specifically mentions EquipmentShare's conduct. That allegation—buried in Paragraph 109—asserts that when EquipmentShare began using Rouse's software at some unspecified time, "multiple other Rental Company Defendants complained that EquipmentShare brought down prices, but it did not take long for EquipmentShare to fall in line with the Rouse Cartel." This lone factual allegation defeats, rather than supports, the allegation that EquipmentShare joined a conspiracy when it began using Rouse's software because it shows that EquipmentShare undercut prices and disrupted any purported coordinated pricing. Plaintiffs then tack on the conclusory assertion that EquipmentShare "fell in line with the" alleged conspiracy, but the CAC contains no well-pled factual allegations suggesting how or when EquipmentShare later joined the alleged conspiracy. The lack of well-pled facts is telling. Most of the initially named plaintiffs themselves chose not to name EquipmentShare as a defendant in their original complaints—only four of the seventeen complaints in this MDL named EquipmentShare.

The CAC elsewhere relies on impermissible group pleading by lumping EquipmentShare into the defined term "Rental Company Defendants." This drafting shortcut cannot be substituted for factual allegations showing that EquipmentShare joined an alleged conspiracy. That group pleading is especially implausible here given that EquipmentShare did not even start operating until 2015, yet Plaintiffs make allegations about the "Rental Company Defendants" from before that time. Plaintiffs thus attempt to sweep EquipmentShare into a narrative about industry behavior that predates its existence. The catch-all term for "Rental Company Defendants" does not supply

the missing factual content needed to allege plausibly that EquipmentShare joined or participated in any unlawful conspiracy.

The claims against EquipmentShare are implausible and the company should be dismissed from the CAC on that basis alone.[1] The pleading requirements of the Federal Rules of Civil Procedure exist precisely to prevent companies like EquipmentShare from being dragged into costly litigation without a plausible factual basis. That gatekeeping function takes on additional importance here because antitrust discovery has become exceedingly expensive. As the Seventh Circuit has cautioned, "[o]nly by requiring plaintiffs to plead facts plausibly suggesting [a] conspiracy can we avoid the potentially enormous expense of discovery" where there is no plausible basis to push a defendant past the pleadings in the first place. *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) (citations omitted). EquipmentShare should not be forced to shoulder the substantial burdens of antitrust discovery where Plaintiffs failed to allege facts plausibly suggesting the company joined any unlawful conspiracy.

## BACKGROUND

Plaintiffs' CAC alleges that, at some point beginning "in or around 2011," an antitrust conspiracy was born. They bring two claims, asserting that Defendants have fixed, raised, and maintained rental prices for construction equipment (Count One), and conspired to exchange competitively sensitive information related to equipment rentals and to then use Rouse's analytics to guide pricing and utilization decisions (Count Two). CAC ¶¶ 1, 117, 250-52, 266.

---

[1] EquipmentShare also joins in Defendants' Joint Motion to Dismiss, which provides additional and separate reasons why the CAC is defective and should be dismissed.

According to Plaintiffs, upon launching in 2011, Rouse began collecting "invoice-level pricing and utilization data" from its participants and returned to those participants "standardized rate benchmarks." *Id.* ¶ 68. The CAC alleges that in the four years after Rouse launched in 2011, more than "forty other rental companies had joined." *Id.* ¶ 70. More recently, Rouse is alleged to have refined its platform and grown its list of participants, such that Rouse's participants now include "almost every leading national rental company" who all use Rouse to "harmonize[] pricing decisions across the industry." *See, e.g., id.* ¶¶ 70-79, 117. Plaintiffs allege that Rouse and various rental companies effectively operate a conspiracy wherein they delegate unspecified "aspects of their pricing and operational decision-making to Rouse" in order to "exchange[] competitively sensitive information, adopt[] common benchmarks and algorithms, and jointly enforce[] adherence to uniform pricing and performance norms." *See, e.g., id.* ¶ 117. Plaintiffs call this the "Rouse Cartel." *Id.* ¶ 2.

EquipmentShare began operating in 2015 and is the "fastest-growing equipment solutions provider in the" United States. *Id.* ¶ 47. EquipmentShare began operations four years after the alleged conspiracy began in 2011, and the allegations suggest EquipmentShare did begin using Rouse's software until much later. *See id.* ¶¶ 109, 117. When EquipmentShare began using Rouse's software, the CAC alleges that other Rental Company Defendants allegedly "complained" that EquipmentShare "brought down prices." *Id.* ¶ 109. But EquipmentShare allegedly came around and soon got "in line" with the "Rouse Cartel." *Id.* There are no allegations as to how or when EquipmentShare was made to get "in line" with or otherwise join the alleged conspiracy. Nor does the CAC allege what happened after EquipmentShare got "in line," such as whether its rental prices increased, decreased, or were unchanged—let alone whether it adopted what Plaintiffs call the "RRI Prices."

3

**ARGUMENT**

The CAC does not plead sufficient factual matter plausibly to suggest that EquipmentShare joined any purported conspiracy—an essential element of any Sherman Act Section 1 claim. 15 U.S.C. § 1. A complaint fails to state a claim where, as here, it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although an antitrust complaint "need not contain detailed 'defendant by defendant' allegations, it must allege that each individual defendant joined the conspiracy and played some role in it because at the heart of an antitrust conspiracy is an agreement and a conscious decision to join it." *Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877, 900 (N.D. Ill. 2009) (collecting authority). Accordingly, to state a viable Section 1 claim, "it remains essential to show that a particular defendant joined the conspiracy and knew of its scope." *Hansen v. Nw. Univ.*, No. 24-cv-9667, 2025 WL 2731378, at *10 (N.D. Ill. Sept. 24, 2025) (Ellis, J.) (*citing Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).

**I.      The Only Substantive Allegation Directed to EquipmentShare Establishes that the Company Did Not Join Any Conspiracy.**

Despite spanning 270 paragraphs, the CAC contains only a single substantive allegation that EquipmentShare joined the supposed "Rouse Cartel." CAC ¶ 109.[2] A closer inspection, however, reveals that this allegation suggests the opposite.

---

[2] The other instances where the CAC specifically references EquipmentShare concern benign background information like EquipmentShare's company background, CAC ¶¶ 46, 47, reported revenue, *id.* ¶¶ 47, 150, or that lump EquipmentShare in under the heading of "Rental Company Defendants," *e.g.*, *id*. ¶¶ 124, 126.

4

Specifically, the CAC alleges that when EquipmentShare "first began using Rouse" at some point well after it was formed, "multiple other Rental Company Defendants complained that EquipmentShare brought down prices," but that "it did not take long for EquipmentShare to fall in line with the Rouse Cartel." *Id.* ¶ 109. This allegation confirms that EquipmentShare was not part of any anticompetitive conspiracy when it began using Rouse's software because EquipmentShare "brought down prices"—the opposite of what Plaintiffs claim the "Rouse Cartel" was intended to accomplish. Although the CAC refers to supposed complaints from other Rouse Company Defendants about EquipmentShare failing to "fall in line," there are no details as to when or to whom they were made. Nor are there any well-pled facts clarifying how or when EquipmentShare eventually got "in line" (supposedly) and what that means in terms of how EquipmentShare priced its rental equipment. This allegation does not plausibly suggest that EquipmentShare became a member of the "Rouse Cartel." Rather, it suggests that EquipmentShare priced in ways that were *inconsistent* with an agreement to align rental pricing. That leaves Plaintiffs with mere "labels and conclusions" that EquipmentShare joined the purported conspiracy, which is insufficient. *E.g.*, *Hackman v. Dickerson Realtors, Inc.*, 557 F. Supp. 2d 938, 946 (N.D. Ill. 2008) (dismissing antitrust claims where the complaint did not go beyond "labels and conclusions") ("*Hackman II*").

While Plaintiffs try to portray EquipmentShare's price competition as it "cheating" on the supposed "Rouse Cartel," the CAC contains no well-pled factual allegations explaining how Rouse (or any other Defendant) used unspecified "enforcement tools" to make EquipmentShare "fall in line." CAC ¶¶ 97-111. Instead, it is equally plausible that EquipmentShare's emergence as "the fastest-growing equipment solutions provider in the U.S.," *id.* ¶ 47, is because EquipmentShare offers customers a superior offering compared to that of other providers of rental equipment. When allegations can "just as easily reflect innocent conduct or rational self-interest," such as those

5

leveled against EquipmentShare, they cannot be used to support an inference of conspiracy. *See, e.g.*, *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 351 (7th Cir. 2022).

Elsewhere, Plaintiffs allege that, after Rouse's benchmarking service went live in 2011, Rouse expanded its membership to include other companies, including EquipmentShare, and that Rouse "encouraged them to begin sharing their competitively sensitive data with the Rouse Cartel." CAC ¶ 124. As an initial matter, EquipmentShare did not begin operating until 2015, four years later, and did not begin using Rouse's software until even later. Beyond this timing issue, mere allegations of encouragement are insufficient to plead the existence of an antitrust conspiracy. *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 965 (N.D. Ill. 2007). And, even if EquipmentShare did, as Plaintiffs allege, provide "sensitive data" to Rouse, for the reasons explained in Defendants' Joint Motion to Dismiss that does not allow the further inference that EquipmentShare agreed to an anticompetitive conspiracy. As this Court recently explained in *In re Manufactured Home Lots Antitrust Litig.*, the mere provision of information to a third-party benchmarking service like Rouse, even with an awareness that competitors were doing the same, does not support an inference that a conspiracy was reached. No. 23-cv-06715, 2025 WL 3485693, at *4 (N.D. Ill. Dec. 4, 2025).

In sum, there are no well-pled factual allegations in the CAC that plausibly suggest EquipmentShare joined the purported "Rouse Cartel." This alone is grounds to dismiss EquipmentShare from the CAC.

## II. Plaintiffs Cannot State a Claim Against EquipmentShare By Group Pleadings Directed Against the "Rental Company Defendants."

Other than the allegations discussed above, the CAC contained no factual allegations directed to EquipmentShare specifically. Instead, Plaintiffs define EquipmentShare as one of the

6

"Rental Company Defendants" and go on to allege misconduct by the collective group. That group-pleading strategy fails to establish that EquipmentShare violated the antitrust laws.

Though a "complaint need not contain detailed 'defendant by defendant' allegations, it must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *Standard Iron Works*, 639 F. Supp. 2d at 900 (quotes omitted). "The Court properly looks for more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy." *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 438 (E.D. Pa. 2018) (quotes omitted); *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011) (same); *see also In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388 (S.D.N.Y. 2019) ("Allegations about the defendants as a general collective bloc, or generalized claims of parallel conduct, must be set aside as impermissible group pleading.") (quotes omitted).[3] Merely "sprinkling a complaint with conclusory assertions that a party was a participant in coordinated conduct or a conspirator or acted in concert with others does not make the requisite showing of entitlement to relief mandated by Rule 8(a)(2)." *In re Generic Pharms. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 484 (E.D. Pa. 2019).

Here, Plaintiffs' broad allegations against the "Rental Company Defendants" do not plausibly suggest that EquipmentShare specifically joined or had any role in the alleged "Rouse Cartel." Any such suggestion is contradicted by the specific allegation that EquipmentShare acted in ways that are inconsistent with its participation in any conspiracy. CAC ¶ 109.

---

[3] *See also Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) (use of term "defendants" to refer to multiple, differentially situated parties insufficient to demonstrate plausible participation in the alleged conspiracy).

Moreover, many of Plaintiffs' allegations are nothing more than conclusory assertions that the "Rental Company Defendants" aligned on price. *See, e.g.*, CAC ¶ 95 ("Rental Company Defendants price within the range of RRI Prices approximately ninety percent of the time."); *id.* ¶ 96 ("Rental Company Defendants and their Co-Conspirators began coordinating pricing through Rouse's benchmarks"); *id.* ¶ 159 ("In sum, the Rental Company Defendants conspired to exchange current, non-public pricing, utilization, fleet, and performance data and to adopt uniform benchmarks and analytics generated from that shared information."). But a complaint must go beyond "labels and conclusions" plausibly to suggest that EquipmentShare specifically had a "conscious commitment to a common scheme." *Hackman II*, 557 F. Supp. 2d at 946. Repeatedly stating that monolithic "Rental Company Defendants" aligned on price or reached an agreement does plausibly suggest that EquipmentShare did so.

Plaintiffs also make various allegations that the "Rental Company Defendants" (i) each adopted a common software application (Rouse) for benchmarking efforts, *e.g.*, CAC ¶¶ 80, 98, and (ii) attended the same tradeshows, *e.g.*, *id.* ¶ 81. But, as explained in Defendants' Joint Motion to Dismiss, even if such actions could be fairly imputed to EquipmentShare as one of the "Rental Company Defendants," they do not plausibly suggest the existence of an antitrust violation. Nor do these allegations suggest that EquipmentShare specifically acted in a particular way with Rouse's software or even attended any trade shows.

Perhaps most revealing, when the CAC attempts to illustrate how the "Rental Company Defendants" behaved by pointing to actions of particular Defendants, EquipmentShare is not used as the example. *See, e.g.*, CAC ¶¶ 90, 100, 153, 183, 188. Where a complaint links specific factual allegations to only some defendants, allegations against other defendants under an "umbrella" term (like "Rental Company Defendants" here) are insufficient to suggest they did the same. *See In re*

8

*Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 746. Plaintiffs nonetheless ask this Court to assume that EquipmentShare must be treated the same as all other "Rental Company Defendants," yet *Twombly* requires more.

The implausibility of Plaintiffs' attempt to group-plead EquipmentShare into this purported antitrust conspiracy is further underscored by Plaintiffs' many allegations that predate EquipmentShare's existence. As the CAC itself admits, EquipmentShare did not begin operations until 2015, rendering pre-2015 allegations irrelevant as to EquipmentShare. *See, e.g.*, CAC ¶¶ 60-74 (describing the pre-Rouse industry, industry debate over "rate discipline," and development of Rouse's rental-benchmarking service); *id.* ¶¶ 117, 124, 185-86 (discussing the beginning of the agreement "in or around 2011"); *id.* ¶¶ 121-23 (alleged invitations to collude in 2010), *id.* ¶¶ 140 & Fig. 13 (alleged impact of Rouse on rental rates in 2011-2014). None of these allegations can be attributed to EquipmentShare or support an inference that EquipmentShare joined the alleged "Rouse Cartel."

Ultimately, the CAC lacks facts plausibly suggesting that EquipmentShare joined in or otherwise engaged in any violation of the antitrust laws. Plaintiffs' claims against EquipmentShare should be dismissed.

## CONCLUSION

For the reasons set forth herein, EquipmentShare respectfully requests that the claims against it in the CAC be dismissed with prejudice.

| | |
|---|---|
| Dated: January 9, 2026 | Respectfully submitted,<br><br>*/s/  Kenneth M. Kliebard*<br>Kenneth M. Kliebard<br>MORGAN, LEWIS & BOCKIUS LLP<br>110 North Wacker Drive<br>Chicago, IL 60606-1511<br>(312) 324-1000<br>kenneth.kliebard@morganlewis.com<br><br>Zachary M. Johns (*admitted pro hac vice*)<br>MORGAN, LEWIS & BOCKIUS LLP<br>2222 Market Street<br>Philadelphia, PA 19103-2921<br>(215) 963-5000<br>zachary.johns@morganlewis.com<br><br>J. Clayton Everett, Jr. (*admitted pro hac vice*)<br>MORGAN, LEWIS & BOCKIUS LLP<br>1111 Pennsylvania Avenue NW<br>Washington, DC 20004-2541<br>(202) 739-3000<br>clay.everett@morganlewis.com<br><br>Rishi P. Satia (*admitted pro hac vice*)<br>MORGAN, LEWIS & BOCKIUS LLP<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1596<br>(415) 442-1000<br>rishi.satia@morganlewis.com<br><br>*Counsel for Defendant*<br>*EquipmentShare.com Inc.* |