**THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: CONSTRUCTION EQUIPMENT RENTAL ANTITRUST LITIGATION | Case No. 1:25-cv-3487 MDL No. 3152 The Honorable Sara L. Ellis |

**DEFENDANT HOME DEPOT U.S.A., INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.............................................................................................................ii

II.     BACKGROUND .............................................................................................................2

     A.     The Limited and Inconsistent Inclusion of Home Depot in the Pre-MDL
        Complaints .................................................................................................................2

     B.     The Sparse and Inconsistent Allegations About Home Depot in the
        Consolidated Amended Complaint.....................................................................4

III.    ARGUMENT ....................................................................................................................6

     A.     The Complaint Does Not Plausibly Allege That Home Depot Entered an
        Antitrust Conspiracy.................................................................................................7

     B.     Home Depot's Inclusion in the Complaint Reinforces the Implausibility of
        the Alleged Conspiracy. .........................................................................................10

     C.     Home Depot Should Not Be Burdened with Costly Antitrust Discovery in
        Service of a Facially Implausible Complaint. ...................................................13

IV.     CONCLUSION.............................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*2nd Gen Plumbing, LLC v. RB Global, Inc.*,
  1:25-cv-05000 (N.D. Ill.) ............................................................................... 3

*Abbott Labs. v. Adelphia Supply USA*,
  No. 15-CV-5826 (CBA) (LB), 2017 WL 5992355 (E.D.N.Y. Aug. 10, 2017) ...................... 9

*Agnew v. NCAA*,
  683 F.3d 328 (7th Cir. 2012) .......................................................................... 10

*Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*,
  15 F.4th 831 (7th Cir. 2021) .......................................................................... 13

*Bank of Am., N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ........................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 6, 8, 14

*FTC v. Advoc. Health Care Network*,
  841 F.3d 460 (7th Cir. 2016) .......................................................................... 12

*Greco v. Mallouk*,
  No. 22 C 2661, 2024 WL 4119169 (N.D. Ill. Sept. 9, 2024) ............................................ 7

*Hansen v. Nw. Univ.*,
  No. 24 C 9667, 2025 WL 2731378 (N.D. Ill. Sept. 24, 2025) ................................. 4, 7, 8, 10

*In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*,
  No. 09CV2002, 2011 WL 3702453 (S.D. Cal. Aug. 22, 2011) ........................................... 13

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) ........................................................................... 8

*Int'l Equip. Trading, Ltd. v. Illumina, Inc.*,
  312 F. Supp. 3d 725 (N.D. Ill. 2018) .................................................................. 14

*Jung v. Ass'n of Am. Med. Colls.*,
  300 F. Supp. 2d 119 (D.D.C. 2004) ..................................................................... 9

*Kassner v. Kadlec Reg'l Med. Ctr.*,
    No. 11-5114 (RMP), 2012 WL 523675 (E.D. Wash. Feb. 15, 2012) ................................. 13

*Limestone Dev. Corp. v. Vill. of Lemont, Ill.*,
    520 F.3d 797 (7th Cir. 2008) ............................................................................................. 14

*Olean Wholesale Grocery Cooperative, Inc. v. Agri Stats, Inc.*,
    No. 19 C 8318, 2020 WL 6134982 (N.D. Ill. Oct. 19, 2020) ............................................. 9

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) .............................................................................................. 13

*Riley v. Info. Sys. Audit & Control Ass'n, Inc.*,
    No. 22 C 4465, 2023 WL 3997075 (N.D. Ill. June 14, 2023) ........................................... 14

*Texas Ujoints LLC v. Dana Holding Corp.*,
    No. 13-C-1008, 2014 WL 4443276 (E.D. Wis. Sept. 9, 2014) .......................................... 14

*United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*,
    390 F. Supp. 3d 892 (N.D. Ill. 2019) ........................................................................... 7, 13

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) ........................................................................................................... 12

## I.   INTRODUCTION

Plaintiffs reference Home Depot by name in just 5 of the 272 paragraphs of the Consolidated Amended Class Action Complaint ("CAC" or "complaint").  That is no surprise since Home Depot is "the world's largest home improvement retailer," CAC ¶ 44, which also rents a variety of tools, trucks, and equipment through rental centers in its retail stores.  Most of the complaints later centralized in this MDL recognized the differences between Home Depot's core business—which is not large equipment rental—and that of the other defendants, and rightfully did not name Home Depot as a defendant.  The CAC nevertheless names Home Depot but alleges scant factual or other support for doing so.  Home Depot supports the joint motion to dismiss the complaint in its entirety.  But there are additional, independent reasons to dismiss Home Depot.

First, the complaint contains virtually no allegations about Home Depot's use of the Rouse Rental Insights ("RRI") benchmarking product.  There are no allegations that Home Depot adopted so-called "RRI Prices" in connection with any of its rentals, that it priced any rentals in the alleged market similarly to other so-called "Rental Company Defendants," or even that its rental prices increased over time.  These omissions are fatal to plausibly pleading that Home Depot joined an antitrust conspiracy.

Second, the complaint's sparse allegations about Home Depot's operations underscore the implausibility of plaintiffs' alleged market.  Plaintiffs themselves allege that—unlike dedicated suppliers of large construction and industrial equipment rentals—Home Depot is a "home improvement retailer" with 1,300 retail store locations that also offer "rental services," predominantly of "hand tools" and moving trucks, along with some other equipment.  CAC ¶ 44.  Plaintiffs' attempt to gerrymander a market of "medium-to-large machinery" rentals to capture Home Depot ignores the commercial realities of the market for "construction and industrial

equipment" rentals that plaintiffs allege is industry-recognized. CAC ¶ 54. In fact, plaintiffs' recharacterized market underscores the absence of plausible allegations that Home Depot competes in a properly defined product market.

Finally, allowing this case to proceed against Home Depot would impose precisely the sort of needless expense *Twombly*'s pleading standard was established to foreclose. The Court should dismiss all claims against Home Depot.

## II.    BACKGROUND

### A.    The Limited and Inconsistent Inclusion of Home Depot in the Pre-MDL Complaints

AXG Roofing, LLC ("AXG") initiated this litigation on April 1, 2025, alleging a price-fixing conspiracy in the market for large construction equipment rentals. *AXG Roofing, LLC v. RB Global, Inc.*, No. 1:25-cv-03487, Dkt. 1, ¶ 1 (N.D. Ill. Apr. 1, 2025). AXG's complaint defined "construction equipment" as "lifts, dozers, excavators, hoes, steers, compaction equipment, loaders, and the like . . . used in residential and commercial construction and ha[ving] many industrial applications." *Id.* AXG did not name Home Depot as a defendant.

Two weeks later, Immediate Appliance Service, Inc. ("IAS") filed a complaint that named The Home Depot, Inc.—the publicly traded Home Depot parent entity—as a defendant alongside the defendants named by AXG. *See Immediate Appliance Service, Inc. v. RB Global, Inc.*, No. 1:25-cv-04139, Dkt. 1 (N.D. Ill. Apr. 16, 2025). IAS described Home Depot as "the world's largest home improvement retailer." *Id.* ¶ 32. IAS alleged that, in addition to "sell[ing] a wide range" of products, Home Depot provides "several services, including tool and equipment rental and home improvement installation services." *Id.* IAS alleged that, "[a]s of 2023, Home Depot operated 2,335 stores" across North America. *Id.* IAS did not allege when Home Depot started using RRI or anything else to suggest Home Depot joined a conspiracy. The closest it came to a

timing allegation was referencing "a marketing slide deck from 2024," in which "Rouse lists all

355 U.S. Companies who use Rouse Rental Insights." *Id.* ¶ 68. IAS embedded "a snippet of the

slide" in its complaint:



IAS also departed from AXG in its product market definition. Rather than alleging a

market for large construction and industrial equipment rentals, IAS alleged a far broader market

consisting of "various pieces of rental equipment and tools used for construction, manufacturing,

entertainment, and other industries ('Rental Equipment')." *Id.* ¶ 1.

Over the next four months, twenty additional complaints were filed; just six of them

named any Home Depot entity, all with minimal allegations similar to those in the IAS

complaint.[1] The JPML consolidated these cases into this MDL on August 13, 2025.

---

[1] *Compare Kris Swanson Construction, LLC v. RB Global, Inc.*, 1:25-cv-04236 (N.D. Ill.); *IPCS Corp. v. RB Global, Inc.*, 1:25-cv-04825 (N.D. Ill.); *Haxton Masonry, Inc. v. RB Global, Inc.*, 2:25-cv-03902 (C.D. Cal.); *IZQ Construction LLC v. RB Global, Inc.*, 1:25-cv-04872 (N.D. Ill.); *2nd Gen Plumbing, LLC v. RB Global, Inc.*, 1:25-cv-05000 (N.D. Ill.); *Ultra Home Set, LLC v. RB Global, Inc.*, 1:25-cv-05951 (N.D. Ill.); *Strupp Trucking, Inc. v. RB Global, Inc.*, 3:25-cv-00846 (D. Conn.); *McGinnis Construction Co., Inc. v. RB Global, Inc.*, 3:25-cv-00873 (D. Conn.); *Dipietro Construction Corp. v. RB Global, Inc.*, 1:25-cv-06742 (N.D. Ill.); *Hayden's Services, LLC v. RB Global, Inc.*, 3:25-cv-01059 (D. Conn.); *Coneco Building LLC v. RB Global, Inc.*, 1:25-cv-08396 (N.D. Ill.); *PS Bruckel, Inc. v. RB Global, Inc.*, 3:25-cv-01191 (D. Conn.); *Van Horst General Contractors, LLC v. RB Global, Inc.*, 3:25-cv-01204 (D. Conn.); *Contract Manufacturing Services, Inc. v. RB Global, Inc.*, 3:25-cv-01262 (D. Conn.), *with Mack's Junk Removal, LLC v. RB Global, Inc.*, 2:25-cv-03565 (C.D. Cal.); *Signs v. RB Global, Inc.*, 4:25-cv-00158 (S.D. Iowa); *Dwight Roberts Construction Co. v. RB Global, Inc.*, 2:25-cv-04031 (C.D. Cal.); *Enterprise Lodging of Huntsville, L.L.C. v. RB Global, Inc.*, 3:25-cv-00823 (D. Conn.); *Matrix Construction LLC v. RB Global, Inc.*, 2:25-cv-05364 (C.D. Cal.); *Township of Middletown v. RB Global, Inc.*, 1:25-cv-10267 (N.D. Ill.).

**B.      The Sparse and Inconsistent Allegations About Home Depot in the Consolidated Amended Complaint**

Plaintiffs filed the consolidated amended complaint on November 7, 2025.  Dkt. 145.  That complaint's allegations about Home Depot are as bare as those in the IAS complaint.

The complaint starts by conflating Home Depot's parent entity and an operating subsidiary into an entity plaintiffs call "The Home Depot U.S.A., Inc."  CAC ¶ 43.  Presumably, plaintiffs intended to name Home Depot U.S.A., Inc., the entity that operates Home Depot's stores and rental centers.  Only the parent is "a publicly traded company." *Id.*  "The Home Depot U.S.A., Inc." does not exist.

The complaint again acknowledges that "Home Depot is the world's largest home improvement retailer," but goes on to assert that it "both sells and rents an enormous selection of equipment, from hand tools used by fabled 'weekend warriors' to Construction Equipment rented by large, multistate contractors."  CAC ¶ 44.  The complaint further alleges that "Home Depot's rental business has seen rapid growth in recent years.  In the first three months of 2023, Home Depot opened 37 new rental centers offering Construction Equipment rentals.  With 1,300 locations offering rental services, Home Depot has described its network as '*the largest equipment rental network in the U.S.*' and is actively expanding infrastructure to support rental dispatch of large-scale construction equipment."  CAC ¶ 45 (emphasis added).

The italicized quote is from a 2021 press release titled "The Home Depot Launches Online Rental Reservations; Opens New Rental Locations."  *See* Ex. 1, *available at* https://ir.homedepot.com/news-releases/2021/06-23-2021-130016632.[2]  That press release

_____

[2] "Although the Court normally cannot consider extrinsic evidence without converting a Rule 12(b)(6) motion to dismiss into one for summary judgment, . . . the Court may consider 'documents that are central to the complaint and are referred to in it' in ruling on a motion to dismiss."  *Hansen v. Nw. Univ.*, No. 24 C 9667, 2025 WL 2731378, at *1 n.1 (N.D. Ill. Sept. 24, 2025) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), and citing *Jackson v.*

identifies the type of "equipment" Home Depot's rental centers focus on: "From demolition tools like breakers and concrete saws to landscaping tools like tillers and sod cutters to trailers and moving vehicles, customers can now reserve and rent equipment online up to 30 days in advance." *Id.* Linking to one of the "new rental locations" identified in the press release leads to a landing page for "Tool & Truck Rentals" that also references "Large Equipment Rentals" deep into the page. Ex. 2, *available at*

https://www.homedepot.com/l/Pasadena/CA/Pasadena/91107/6037/rentals.

Apart from these three introductory paragraphs, the complaint identifies Home Depot just twice. First, the complaint alleges that, "[o]nce Rouse went live with its RRI Price in 2011, it expanded membership to additional rental companies—including Sunstate, Sunbelt, Home Depot, and EquipmentShare—and encouraged them to begin sharing their competitively sensitive data with the Rouse Cartel." CAC ¶ 124. Second, the complaint alleges "Home Depot's rental revenue was estimated to have increased nearly 40 percent between 2020 and 2024." CAC ¶ 150. But neither paragraph alleges when Home Depot actually started using RRI, much less connects the use of that benchmarking product to any increase in Home Depot's rental revenue or its prices for any particular equipment rentals.

The only paragraph that could be seen as indirectly alleging when Home Depot used RRI states: "By 2015, Sunstate and more than forty other rental companies had joined. And by 2020, all or nearly all of the major national rental companies were active participants. In a 2024 document, Rouse identified the Rental Company Defendants as the 'Large General Rental' members of the Rouse Cartel." CAC ¶ 10. Although no citation is provided, this is the same

---

*Curry*, 888 F.3d 259, 263 (7th Cir. 2018)). All documents referenced in this brief are available online and, for convenience, attached as exhibits to the concurrently filed declaration of David C. Kiernan.

language used in the IAS complaint, which also refers to a 2024 document identifying "Large General Rental" as one category of Rouse's 355 United States users and identifying "Home Depot Rental" in that category. IAS Compl. ¶ 68. Thus, the complaint alleges indirectly only that Home Depot was using RRI *by* 2024.

As for market definition, the complaint attempts to harmonize the AXG and IAS complaints, defining "Construction Equipment" as "*medium-to-large machinery*, such as aerial lifts (e.g., boom lifts, scissor lifts, forklifts, and telehandlers), excavators, dozers, skid steers, compaction machines, lighting towers, generators, backhoes, loaders, and others." CAC ¶ 54 (emphasis added); *accord id.* ¶ 207 (also identifying "aerial work platforms, . . . trenchers, [and] compressors"). According to the complaint, "[t]his market encompasses . . . industrial-grade machinery used in commercial, industrial, and infrastructure construction." *Id.* ¶ 207. The complaint continues: "These machines differ from small hand tools or light equipment that could fit in a car, as they may require specialized transport, maintenance, and capital management. The ARA [American Rental Association], Rouse Analytics, and *Rental Equipment Register* ('*RER*'), an industry publication, all treat 'construction and industrial equipment rentals' as a distinct sector separate from light-tool or homeowner rentals." CAC ¶ 54.

## III.    ARGUMENT

As the joint motion shows, plaintiffs' allegation that each Rental Company Defendant independently entered a contract with Rouse is not direct evidence of a conspiracy *among the Rental Company Defendants*. As for circumstantial evidence, "[a]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to plead an antitrust conspiracy either. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556-57. In addition, "it remains essential to

-6-

show that a particular defendant joined the conspiracy and knew of its scope." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013); *see also Hansen*, 2025 WL 2731378, at *10 (citing same proposition in dismissing § 1 claim). The complaint here "does not get even that far." *Knight*, 725 F.3d at 818.

### A. The Complaint Does Not Plausibly Allege That Home Depot Entered an Antitrust Conspiracy.

The central requirement of an antitrust conspiracy is "an illegal agreement." *Greco v. Mallouk*, No. 22 C 2661, 2024 WL 4119169, at *6-7 (N.D. Ill. Sept. 9, 2024); *United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 905 (N.D. Ill. 2019) ("[A]t the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.") (cleaned up). But the complaint does not identify any agreement between Home Depot and other Rental Company Defendants. Indeed, all the complaint alleges is that—at some unidentified point since the conspiracy allegedly began in 2011, and no later than 2024, CAC ¶ 10—Home Depot started using RRI. That is insufficient to allege an antitrust conspiracy.

Beyond failing to allege *when* over a 13-year period Home Depot allegedly joined the asserted conspiracy (in fact, Home Depot signed a contract with Rouse in March 2022 that included a one-year trial period of RRI), the complaint includes no allegations regarding even the basics on *how* Home Depot uses RRI, *what* it uses RRI for (given that it primarily rents tools and trucks), *where* it uses RRI (e.g., retail stores, rental centers, or rental only facilities in some or all parts of the country), or *why* it would agree to use a purported "RRI Price" (when Home Depot is known as a value provider). The complaint does not allege that Home Depot made any of the supposed "public admissions" or other statements about Rouse. *Cf.* CAC ¶¶ 92-95, 139, 147, 173-77. It does not allege Home Depot was highlighted in any Rouse presentations. *Cf.* CAC ¶ 86. Nor does it allege that Home Depot raised prices or otherwise acted in parallel with the

other defendants. *Cf.* CAC ¶¶ 185-90. There is nothing in the complaint about Home Depot's conduct other than that it happened to use Rouse's benchmarking product, and there are no allegations that Home Depot acted against its independent self-interest. But *Twombly* requires details, not mere "conclusory allegation[s]." 550 U.S. at 557; *accord Hansen*, 2025 WL 2731378, at *10 (dismissing § 1 claim where there were "no details" as to certain defendants' "involvement in the alleged agreement aside from the allegations that they belong to the College Board and, at some point since 2006, began requiring NCP financial information").

The complaint's sparse allegations about Home Depot's operations actually undermine the conspiracy claims against Home Depot. While plaintiffs allege that Home Depot's rental *revenues* increased nearly 40 percent between 2020 and 2024, CAC ¶ 150, they also allege that Home Depot's "rental business has seen rapid growth in recent years" and that it "opened 37 new rental centers" in the first three months of 2023, CAC ¶ 45. Thus, the face of the complaint offers an obvious alternative explanation for Home Depot's alleged revenue increases—the growth of its rental business. In short, Plaintiffs' suggestion that Home Depot increased its rental revenues between 2020 and 2024 by using RRI to conspire about prices is simply implausible, particularly given that Plaintiffs do not even allege that Home Depot was using RRI in 2020 (it was not) or that it *ever* increased prices for any relevant product rentals. *See Twombly*, 550 U.S. at 567 ("obvious alternative explanation[s]" can show that a conspiracy is implausible).

Of course, in a price-fixing conspiracy, allegations of parallel conduct, including parallel price moves, are table stakes. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010) (emphasizing allegations "that in the face of steeply falling costs, the defendants increased their prices" and that "all at once" all four defendants changed their pricing structures). "[C]onclusory allegations unsupported by any facts such as actual prices, are insufficient to

allow the Court to draw any inferences about whether the conduct is indeed parallel." *Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2017 WL 5992355, at *10 (E.D.N.Y. Aug. 10, 2017) (cleaned up). Yet the complaint says nothing of Home Depot's actual prices, conclusory or otherwise. *Cf.* CAC ¶ 188 (alleging that "Rental Company Defendants repeatedly raised prices in lockstep" but only identifying other defendants in subsequent sentences).

Rather than plead any facts specific to Home Depot, plaintiffs simply lump in a home improvement retailer with all the other Rental Company Defendants, ignoring that "[p]laintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations." *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004). *Olean Wholesale Grocery Cooperative, Inc. v. Agri Stats, Inc.* illustrates the requirement that *each* defendant's participation in a conspiracy must be adequately pleaded. No. 19 C 8318, 2020 WL 6134982 (N.D. Ill. Oct. 19, 2020). There, the court dismissed one defendant (Kraft) where the complaint's general price and cost allegations did not speak to the portion of the market in which the defendant competed. *Id.* at *8. And it denied another defendant's motion to dismiss based solely on group pleading where the complaint alleged that a "confidential witness" from that defendant (Cooper) "explain[ed] that Cooper executives met with Agri Stats representatives every six months and that information received from Agri Stats helped Cooper improve its returns per pound." *Id.* at *2, 8-9.

The complaint includes no comparable facts about Home Depot. Plaintiffs appear to have named Home Depot as a defendant simply because it is a large company that has retail locations across the country, many of them with "rental centers." *See* CAC ¶¶ 44-45. But there

are literally hundreds of RRI users that rent large construction and industrial equipment and that are not named in the complaint. *See* CAC ¶ 129 ("By 2023, Rouse boasted that over 400 U.S. rental companies participated in its benchmark program . . . ."). There is no reasonable basis to infer a conspiracy between Home Depot and a handful of RRI users, but not the hundreds of other users that rent large construction and industrial equipment. *See Hansen*, 2025 WL 2731378, at *10 ("The complaint also leaves unexplained how or why this particular subset of institutions that require NCP financial information formed an agreement while leaving out others that also collect and use the same information in their financial aid determinations.").

The Court should dismiss the claims against Home Depot for failure to allege any facts to support that Home Depot, in particular, joined any alleged conspiracy.

### B. Home Depot's Inclusion in the Complaint Reinforces the Implausibility of the Alleged Conspiracy.

Home Depot's inclusion in the Consolidated Amended Complaint after being omitted from two thirds of the original complaints in this MDL underscores the broader implausibility of the alleged conspiracy. As shown above and in the joint motion, plaintiffs have not plausibly alleged a per se price-fixing conspiracy because there are no plausible allegations that Home Depot or any other defendant agreed with each other to use RRI or to set prices. Meanwhile, plaintiffs' rule of reason claims require "a precise market definition in order to demonstrate that a defendant wields market power." *Agnew v. NCAA*, 683 F.3d 328, 337 (7th Cir. 2012). In seeking to bridge the gap between Home Depot and defendants dedicated to renting construction and industrial equipment, plaintiffs have alleged a market definition inconsistent with commercial realities.

The complaint alleges a nationwide market of "medium-to-large machinery, such as aerial lifts (e.g., boom lifts, scissor lifts, forklifts, and telehandlers), excavators, dozers, skid

steers, compaction machines, lighting towers, generators, backhoes, loaders, and others." CAC ¶ 54. Elsewhere, the complaint describes the product market as "industrial-grade machinery used in commercial, industrial, and infrastructure construction." *Id.* ¶ 207. The complaint explains that "[t]hese machines differ from small hand tools or light equipment that could fit in a car, as they may require specialized transport, maintenance, and capital management." *Id.* ¶ 54. Further, "[t]he ARA, Rouse Analytics, and *Rental Equipment Register* ("*RER*"), an industry publication, all treat 'construction and industrial equipment rentals' as *a distinct sector separate from light-tool or homeowner rentals*." *Id.* (second emphasis added).

But the complaint acknowledges that Home Depot operates predominantly in that "distinct sector." Home Depot's primary customers have long been DIY consumers—the home improvement "weekend warriors" referenced in the complaint, CAC ¶ 44—and local professional contractors. As the 2021 press release cited in the complaint shows, Home Depot's rental centers focus on tool and truck rentals that can be reserved online and picked up at stores based on publicly listed prices. *See id.* ¶ 45; Exs. 1, 2.

That alleged rental profile accords with the ARA's category of "general tool/DIY homeowner" rentals—which "includes items usually rented by professional contractors and do-it-yourself homeowners for light construction," such as "small hand-held tools, yard-care equipment, jackhammers, concrete and tile saws, pressure washers, small generators, scaffolding, walk-behind trenchers and small skid-steers." *See* Ex. 3 at 5, *available at* https://ararentalworks.com/wp-content/uploads/2023/02/ARA-Career-Guide.pdf. And that category is distinct from the ARA's category of "construction and industrial equipment" referred to in the complaint, CAC ¶ 54—which encompasses equipment "almost exclusively rented by construction firms or contractors," such as "earthmoving (loaders, excavators and articulated

-11-

dump trucks, etc.), access (aerial work platforms, scaffolding, etc.) and pumps," "oil field and refinery equipment," and "manufacturing machinery." *See* Ex. 3 at 5; *accord supra* note 2 (documents central to and referenced in complaint are properly considered on motion to dismiss).

Even the complaint recognizes that these are distinct markets, alleging that the proposed product "market excludes consumer and light-tool rentals—such as small hand tools, lawn equipment, or homeowner-grade machinery—because: (1) they serve distinct customer segments; (2) they have different pricing structures, distribution channels, and utilization cycles; and (3) they are not reasonably interchangeable with Construction Equipment used for commercial purposes. Contractors and industrial customers require machines capable of earthmoving, lifting, and large-scale site work—functions that consumer-grade equipment cannot perform." CAC ¶ 208.

Plaintiffs try to stretch the alleged product market to reach Home Depot—despite not alleging that Home Depot rents much of the "construction and industrial equipment" the complaint identifies, e.g., cranes, dozers, dump trucks, rollers, and the like. But by doing so, they have pleaded a nonsensical market of "medium-to-large machinery" that includes products, such as small skid-steers and generators, that are in an altogether different category. While antitrust plaintiffs may plead markets consisting of a disparate group of products, a properly pleaded cluster market must "reflect[] commercial realities." *United States v. Grinnell Corp.*, 384 U.S. 563, 572 (1966); *see also* CAC ¶ 207 (referencing cluster market definition from 2023 Merger Guidelines). In a cluster market, "the cluster is itself an object of consumer demand." *FTC v. Advoc. Health Care Network*, 841 F.3d 460, 467 (7th Cir. 2016) (cleaned up). But the very source referenced in the complaint shows that plaintiffs' alleged market conflates two distinct product clusters that are separate objects of consumer demand. Where "markets are

-12-

blurred" like this, the alleged products can "not plausibly be part of a single price fixing conspiracy." *In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, No. 09CV2002, 2011 WL 3702453, at *4 (S.D. Cal. Aug. 22, 2011); *see also Kassner v. Kadlec Reg'l Med. Ctr.*, No. 11-5114 (RMP), 2012 WL 523675, at *5-6 (E.D. Wash. Feb. 15, 2012) (dismissing for failure to adequately allege a product market because "imprecise references to 'medical services'" leaves "no basis upon which to evaluate interchangeability for an antitrust claim").

In short, plaintiffs have not alleged a plausible product market, providing an additional reason for dismissal. *See U.S. Bd. of Oral Implantology*, 390 F. Supp. 3d at 908 ("[W]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is legally insufficient and a motion to dismiss may be granted.") (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)).

### C. Home Depot Should Not Be Burdened with Costly Antitrust Discovery in Service of a Facially Implausible Complaint.

Holding plaintiffs to *Twombly*'s pleading standard matters for another reason: "modern antitrust litigation is expensive. Only by requiring plaintiffs to plead facts plausibly suggesting conspiracy can we 'avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support a § 1 claim.'" *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) (quoting *Twombly*, 550 U.S. at 559). As a result, "*Twombly* bars the discover-first, plead-later approach." *Id.* Home Depot should not be burdened with costly antitrust discovery on facially implausible claims.

The Supreme Court was acutely aware that "a plaintiff with a largely groundless claim [may] be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." *Twombly*, 550 U.S. at 557-58 (internal citations omitted). Put otherwise, "[a]ntitrust claims are expensive to defend and thus offer plaintiffs a large degree of leverage in settlement discussions." *Texas Ujoints LLC v. Dana Holding Corp.*, No. 13-C-1008, 2014 WL 4443276, at *3 (E.D. Wis. Sept. 9, 2014) (citing *Twombly*, 550 U.S. at 559 (noting that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings")).

Thus, "to protect defendants from expensive discovery, '[i]n a complex antitrust . . . case a fuller set of factual allegations . . . may be necessary to show that the plaintiff's claim is not largely groundless.'" *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 730 (N.D. Ill. 2018) (quoting *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008)). Given the near absence of allegations about Home Depot and the implausibility of the complaint's gerrymandered product market, Home Depot is particularly in need of those protections. The Court "must 'insist upon' specificity and clarity in antitrust pleadings." *Riley v. Info. Sys. Audit & Control Ass'n, Inc.*, No. 22 C 4465, 2023 WL 3997075, at *1 (N.D. Ill. June 14, 2023) (quoting *Twombly*, 550 U.S. at 558). When it comes to Home Depot, the complaint contains neither.

## IV. CONCLUSION

The Court should, at minimum, dismiss the claims against Home Depot.

Dated: January 9, 2026

Respectfully submitted,

/s/ David C. Kiernan
David C. Kiernan *(admitted pro hac vice)*

JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
dkiernan@jonesday.com

Caroline Van Wagoner (*admitted pro hac vice*)
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone: (858) 314-1133
cvanwagoner@jonesday.com

Erica E. Duff
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, Illinois 60606
Telephone: (312) 269-1511
eduff@jonesday.com

-and-

Ronan P. Doherty (*admitted pro hac vice*)
Ben W. Thorpe (*admitted pro hac vice*)
BONDURANT MIXSON & ELMORE
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Fax: (404) 881-4111
doherty@bmelaw.com
bthorpe@bmelaw.com

-and-

William P. Barnette (*admitted pro hac vice*)
Peter E. Diaz (*admitted pro hac vice*)
King & Spalding LLP
1180 Peachtree St., Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4729
wbarnette@kslaw.com
pdiaz@kslaw.com

*Counsel for Defendant Home Depot, U.S.A. Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2026, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ David C. Kiernan*
David C. Kiernan
