## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: CONSTRUCTION EQUIPMENT RENTAL ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 1:25-cv-03487<br>MDL No. 3152<br><br>Hon. Sara L. Ellis |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SUNSTATE EQUIPMENT CO., LLC'S MOTION
TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION
<u>COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ...........................................................................................................................4

I. Plaintiffs Allege No Direct Evidence That Sunstate Joined Any Conspiracy ....................5

II. Plaintiffs Allege No Circumstantial Evidence That Sunstate Joined Any Conspiracy ..................................................................................................................6

    A. Plaintiffs Fail to Allege That Sunstate Engaged in Parallel Conduct .....................7

    B. Plaintiffs Fail to Allege "Plus Factors" Regarding Sunstate ................................9

CONCLUSION ......................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Atkins v. Hasan*,
  No. 15 CV 203, 2015 WL 3862724 (N.D. Ill. June 22, 2015) ................................................... 4

*Bank of America, N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) .................................................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 4, 7

*Birim Grp., LLC v. Nduom*,
  No. 20 C 07198, 2021 WL 5493229 (N.D. Ill. Nov. 23, 2021) ................................................ 8

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  691 F. App'x 389 (9th Cir. 2017) ............................................................................................ 9

*Chamberlain Group, Inc. v. Techtronic Industries North America, Inc.*,
  No. 16 CV 06113, 2017 WL 4269005 (N.D. Ill. Sept. 26, 2017) ............................................. 4

*Greco v. Mallouk*,
  No. 22 C 2661, 2024 WL 4119169 (N.D. Ill. Sept. 9, 2024) ................................................ 5, 7

*Hansen v. Northwestern University*,
  No. 24 C 9667, 2025 WL 2731378 (N.D. Ill. Sept. 24, 2025) ......................................... passim

*In re Crop Inputs Antitrust Litigation*,
  749 F. Supp. 3d 992 (E.D. Mo. 2024) ...................................................................................... 8

*In re Processed Egg Products Antitrust Litigation*,
  821 F. Supp. 2d 709 (E.D. Pa. 2011) ....................................................................................... 5

*Marion Healthcare, LLC v. Becton Dickinson & Co.*,
  952 F.3d 832 (7th Cir. 2020) ............................................................................................ 4, 6, 7

*Monsanto Co. v. Spray-Rite Service Corp.*,
  465 U.S. 752 (1984) ................................................................................................................. 4

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
  911 F.3d 505 (8th Cir. 2018) .................................................................................................... 9

*Portillo v. Costar Group, Inc.*,
  No. C24-229RSL, 2025 WL 2495053 (W.D. Wash. Aug. 29, 2025) ....................................... 6

*United States v. Container Corp. of America*,
  393 U.S. 333 (1969) ............................................................................................................6

**STATUTES**

15 U.S.C. § 1.......................................................................................................................1

**RULES**

Federal Rule of Civil Procedure 8 .....................................................................................4

Federal Rule of Civil Procedure 12(b)(6)...........................................................................1

**INTRODUCTION**

Defendant Sunstate Equipment Co., LLC ("Sunstate") joins Defendants' concurrently filed Joint Motion to Dismiss and submits this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to present additional grounds for dismissal applicable to Sunstate.

Despite its breadth, Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") contains almost no substantive allegations against Sunstate. Plaintiffs only mention Sunstate in <u>5 of the 272</u> paragraphs in the CAC. Aside from boilerplate jurisdictional allegations (e.g., Sunstate's place of incorporation and principal place of business), Plaintiffs merely allege that by 2015, Sunstate began licensing Rouse Rental Insights ("RRI"), a benchmarking service offered by Rouse Analytics LLC (together with Rouse Services LLC, "Rouse"), which <u>hundreds</u> of other (non-Defendant) equipment rental companies have licensed. Plaintiffs <u>allege no facts</u> regarding whether or how Sunstate has used RRI or Sunstate's pricing practices. Nor do they identify any statement by Sunstate or any action that it purportedly took in furtherance of the conspiracy—aside from licensing RRI. Instead, Plaintiffs apparently seek to implicate Sunstate in the price-fixing (Count One) and information-sharing (Count Two) conspiracies asserted in the CAC by imputing alleged acts and statements of other Defendants to Sunstate through impermissible group pleading—collectively referring to Sunstate and those other Defendants as "Rental Company Defendants."[1]

Plaintiffs' allegations fail to meet their burden to plead a conspiracy claim against Sunstate under Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs must allege facts that plausibly suggest—through direct or circumstantial evidence—that Sunstate had a conscious commitment

---

[1] "Rental Company Defendants" are Sunstate; United Rentals, Inc. and United Rentals (North America), Inc.; Sunbelt Rentals, Inc.; HERC Rentals Inc. and HERC Holdings Inc.; H&E Equipment Services, Inc.; The Home Depot U.S.A., Inc.; and EquipmentShare.com, Inc.

to join the conspiracies they assert. But Plaintiffs plead no such facts.

<u>First</u>, Plaintiffs allege no direct evidence that Sunstate joined any conspiracy. Sunstate's service contract with Rouse (i.e., a <u>vertical</u> agreement) is not direct evidence that Sunstate entered into a <u>horizontal</u> agreement with its competitors to fix prices or to exchange information. And while Plaintiffs purport to identify "admissions" concerning the existence of a conspiracy, none of those purported "admissions" were made by Sunstate or even reference Sunstate.

<u>Second</u>, Plaintiffs allege no circumstantial evidence that Sunstate joined any conspiracy, which requires Plaintiffs to allege that Sunstate engaged in "parallel conduct" with the other Rental Company Defendants and "plus factors" placing that conduct in a context that suggests a preceding agreement. Plaintiffs fail to allege that Sunstate engaged in parallel conduct, as Sunstate's decision to license RRI is insufficient on its own, Plaintiffs do not allege that Sunstate licensed RRI in concert with any other Rental Company Defendant, and Plaintiffs allege nothing about how Sunstate uses RRI or prices its rentals. Plaintiffs' alleged plus factors are similarly deficient because they do not identify any actions that Sunstate took that could give rise to an inference of conspiracy.

Accordingly, Sunstate respectfully requests that the Court dismiss the CAC as against Sunstate.

## BACKGROUND[2]

Plaintiffs advance only a handful of allegations regarding Sunstate. According to the CAC, Sunstate is a "rental equipment compan[y]" that offers construction equipment rentals to consumers across "approximately 100 branches in sixteen states." (CAC ¶ 42.) It is "incorporated

---

[2] As it must, Sunstate treats the CAC's non-conclusory factual allegations as true only for purposes of this motion.

in Delaware and has its principal place of business" in Arizona. (*Id.* ¶ 41.) It "is a wholly owned subsidiary of Sumitomo Corporation Group." (*Id.*) It "has made a series of acquisitions of other rental companies over the years," with "profits and revenues [that] have grown over time." (*Id.* ¶ 42.) And it began licensing a "benchmarking service" called RRI at an unidentified time prior to 2015, like "more than forty other rental companies." (*Id.* ¶ 70; *see also id.* ¶¶ 10, 124.)

Plaintiffs' allegations about Sunstate end there. Plaintiffs do not make allegations regarding Sunstate's use of RRI. There is no allegation as to whether or how Sunstate uses RRI to set prices, nor is there any allegation as to whether or how Sunstate changed its approach to pricing after licensing RRI. Indeed, Plaintiffs offer no allegations regarding Sunstate's pricing. The CAC also does not identify any statement by Sunstate, or any action it allegedly took in furtherance of the conspiracy (aside from licensing RRI).

Instead, Plaintiffs lump Sunstate together with other Defendants and non-Defendants, using labels like "Rental Company Defendants" and "rental companies." To provide a few examples:

- Plaintiffs allege that "Rental Company Defendants price within the range of RRI Prices approximately ninety percent of the time" and "rarely discount below the RRI Price" (*id.* ¶ 95), but in support of that allegation only point to a statement by a different Defendant's employee and to another statement by the former CEO of a company that Defendant acquired (*see id.* ¶¶ 14, 134);

- Plaintiffs allege that "Rental Company Defendants [] use . . . approval systems to deter underpricing" and limit deviation from the purported "RRI Price[]" range, but only point to purported practices by three non-Sunstate Defendants (*see id.* ¶¶ 92–94, 100); and

- Plaintiffs allege that "Rental Company Defendants repeatedly raised prices in lockstep" over the course of the class period but only point to purported "annual rental rate increases" by four non-Sunstate Defendants (*see id.* ¶ 188).

Plaintiffs allege that certain rental "companies," none of which include Sunstate, advocated for RRI's development (*id.* ¶ 70) and licensed RRI "from its inception" (*id.* ¶ 124). Plaintiffs

3

further allege that "by 2020, all or nearly all of the major national rental companies" were licensing RRI (*id.* ¶ 10) and "over 400" rental companies were doing so by 2024 (*id.* ¶ 185).

Plaintiffs do not plead any facts explaining why they assert claims against Sunstate, unlike the over four hundred other rental companies that allegedly have licensed RRI and have not been named as defendants in the CAC.

## ARGUMENT

Plaintiffs fall far short of alleging "enough facts to state [any] claim to relief that is plausible on its face" against Sunstate, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), because they offer no factual allegations to suggest that Sunstate joined any conspiracy.

Rule 8 of the Federal Rules of Civil Procedure requires Plaintiffs to "provide [each] [D]efendant with fair notice of what [their] claim is, and the grounds upon which it rests." *Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *1 (N.D. Ill. June 22, 2015). Plaintiffs must apprise each Defendant of "what" it "did" that they "assert[] to be wrongful," *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)—i.e., "set forth what each" Defendant "is accused of doing," *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 CV 06113, 2017 WL 4269005, at *3 (N.D. Ill. Sept. 26, 2017). "A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am.*, 725 F.3d at 818.

That Plaintiffs advance "allegations of conspiracy" does not excuse them from this burden. *Id.* "[I]t remains essential to show that a particular defendant joined the conspiracy and knew of its scope." *Id.* To plead a Sherman Act conspiracy as to <u>Sunstate</u>, Plaintiffs must allege that <u>Sunstate</u> "had a conscious commitment to a common scheme designed to achieve an unlawful objective," *Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 841 (7th Cir. 2020) (quoting *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 768 (1984)), through "direct" or "circumstantial" evidence, *Hansen v. Nw. Univ.*, No. 24 C 9667, 2025 WL 2731378, at *7 (N.D.

4

Ill. Sept. 24, 2025) (citation omitted).

As this Court has recognized, "'group pleading' is particularly problematic in [an] antitrust case[,] where the court has to 'consider whether allegations about <u>each Defendant's purported conduct</u> is sufficient to infer an illegal agreement.'" *Id.* at *10 (emphasis added) (citation omitted). "Court[s] properly look[] for more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an . . . antitrust conspiracy" because "collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption . . . that are so great in antitrust . . . cases." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011).

When one strips bare the CAC of all conclusory allegations, labels, and improper group pleading, all it alleges regarding Sunstate is that, at some unidentified point in time by 2015, Sunstate began licensing RRI—which according to Plaintiffs, is licensed by hundreds of other equipment rental companies not named as defendants in the CAC. Those allegations are insufficient to plausibly suggest that Sunstate joined any conspiracy.

**I.      Plaintiffs Allege No Direct Evidence That Sunstate Joined Any Conspiracy**

Plaintiffs fail to offer direct evidence that Sunstate joined a conspiracy with other Rental Company Defendants to fix prices or to exchange information. "Direct evidence constitutes a 'smoking gun' and 'is explicit and requires no inferences to establish the proposition or conclusion being asserted.'" *Greco v. Mallouk*, No. 22 C 2661, 2024 WL 4119169, at *5 (N.D. Ill. Sept. 9, 2024) (citation omitted). Plaintiffs purport to offer "direct evidence" of a conspiracy as to "the Rental Company Defendants" through (1) their vertical contracts with Rouse and (2) supposed admissions by "Rouse and the Rental Company Defendants." (CAC ¶¶ 161–79.) These efforts fail to provide direct evidence as to Sunstate.

<u>First</u>, a <u>vertical</u> contract between Sunstate and Rouse authorizing Sunstate to license

5

Rouse's benchmarking service is not direct evidence that Sunstate entered into a horizontal agreement with its competitors to fix prices or to exchange information. Plaintiffs cannot rely on vertical contracts, without more, to establish the existence of a horizontal agreement. *See, e.g.*, *Marion Healthcare*, 952 F.3d at 842 (holding that vertical agreements with distributors were insufficient to establish horizontal or "rim" agreement among group purchasing organizations). As explained in Defendants' joint motion, while Plaintiffs allege in conclusory fashion that "each participant . . . uses [] pooled benchmarks to guide its own pricing and utilization decisions" "[u]nder the[] contracts" with Rouse (CAC ¶ 162), Sunstate's contract with Rouse contains no provision of the sort (*see* Mem. in Supp. of Defs.' Joint Mot. at 10–11, 17). And Sunstate's subscription to a benchmarking service alone does not suffice to directly evidence a horizontal information-sharing conspiracy. *See Portillo v. Costar Grp., Inc.*, No. C24-229RSL, 2025 WL 2495053, at *5 (W.D. Wash. Aug. 29, 2025) (terms that required hotels to provide historical sales data to benchmarking service for aggregation and redistribution did not directly evidence conspiracy to exchange information, as subscribers could not discern "the most recent price charged or quoted" (quoting *United States v. Container Corp. of Am.*, 393 U.S. 333, 335 (1969))).

Second, the "admissions" Plaintiffs invoke also fail to provide direct evidence that Sunstate joined any conspiracy. Even if these purported admissions could serve as direct evidence, generally—which they cannot (*see* Mem. in Supp. of Defs.' Joint Mot. at 17)—none of them were made by Sunstate or even reference Sunstate. Accordingly, they cannot constitute direct evidence as to Sunstate.

Thus, Plaintiffs fail to offer direct evidence that Sunstate participated in any conspiracy.

## II. Plaintiffs Allege No Circumstantial Evidence That Sunstate Joined Any Conspiracy

Plaintiffs also do not allege circumstantial evidence that Sunstate joined a conspiracy with other Rental Company Defendants to fix prices or exchange information. To plead a conspiracy

6

through circumstantial evidence, Plaintiffs must offer plausible "allegations of 'parallel conduct . . . placed in a context that raises a suggestion of a preceding agreement'" through plausible allegations of "plus factors." *Hansen*, 2025 WL 2731378, at *8 (quoting *Twombly*, 550 U.S. at 557). Plaintiffs allege neither parallel conduct nor plus factors involving Sunstate.

        A.        **Plaintiffs Fail to Allege That Sunstate Engaged in Parallel Conduct**

Plaintiffs fail to allege that Sunstate engaged in conduct that was parallel to that of other Rental Company Defendants. To plead parallel conduct, it is not enough for Plaintiffs simply to allege that the Rental Company "Defendants all engaged in similar conduct." *Greco*, 2024 WL 4119169, at *7. Rather, they must plausibly allege that the Rental Company Defendants did so in a manner "indicative of a conspiracy"—e.g., "in concert with each other" and by similar means. *Id.* (concluding that, while plaintiffs alleged defendants "engaged in similar conduct," they failed to plead "parallel conduct" because defendants "acted at different times and for seemingly different reasons"); *Marion Healthcare*, 952 F.3d at 843 (concluding that plaintiffs failed to allege that "distributors engaged in parallel conduct" where all they alleged was that "distributors buy and sell [] devices in accordance with the terms of [] contracts that [alleged co-conspirators] have negotiated").

Plaintiffs do not meet that burden here. As an initial matter, the mere allegation that Sunstate licensed RRI is insufficient to plead that Sunstate engaged in parallel conduct. (*See* Mem. in Supp. of Defs.' Joint Mot. at 18–19.) And Plaintiffs do not allege that Sunstate acted "in concert" with any other Rental Company Defendant, *Greco*, 2024 WL 4119169, at *7—only that Sunstate began licensing RRI "by 2015." (CAC ¶¶ 10, 70; *see also* Mem. in Supp. of Defs.' Joint Mot. at 19.)

Plaintiffs must allege something more about Sunstate but fail to do so. Plaintiffs purport to identify various actions that they suggest give rise to an inference of parallel conduct—including

7

alleged changes in pricing methodology, the alleged elimination of discounts, and alleged rate increases.  (CAC ¶¶ 186–88.)  These allegations are altogether deficient (*see* Mem. in Supp. of Defs.' Joint Mot. at 19–20) and particularly lacking as to Sunstate, as Plaintiffs allege nothing about how Sunstate supposedly uses RRI or prices construction equipment rentals.  Instead, the CAC "repeatedly" invokes alleged conduct by other Defendants and tries to "impart[]" that conduct "to all the other [D]efendants," like Sunstate, but that "constitutes improper group pleading and is insufficient to state a claim against" Sunstate.  *Birim Grp., LLC v. Nduom*, No. 20 C 07198, 2021 WL 5493229, at *5 (N.D. Ill. Nov. 23, 2021); *see also In re Crop Inputs Antitrust Litig.*, 749 F. Supp. 3d 992, 1012 (E.D. Mo. 2024) (dismissing defendants where plaintiffs "made anemic allegations against only a few individual [d]efendants, while the rest [were] 'lumped into an undifferentiated amalgam' of 'Defendants,' 'Retailers,' 'Manufacturers,' or 'Wholesalers,' and only summarily alleged to have taken part in the conspiracy").

No Alleged Change in Pricing Methodology.  Plaintiffs assert that "[a]fter 2011, pricing began to converge around Rouse's 'RRI Price' benchmarks," as "[c]ompanies stopped relying on local market conditions and instead used Rouse analytics to 'align pricing' with industry averages." (CAC ¶ 186.)  Plaintiffs claim that four other Rental Company Defendants' executives "publicly acknowledged using Rouse to guide rates and keep pricing aligned." (*Id.*)  But Plaintiffs do not allege anything about Sunstate's prices, let alone that it changed its pricing methodology at any time or that it ever used Rouse to "guide rates."  Relatedly, elsewhere in the CAC, Plaintiffs allege that "Rental Company Defendants price within the range of RRI Prices approximately ninety percent of the time" and "rarely discount below the RRI Price" (*id.* ¶ 95), but in support, Plaintiffs only point to statements by individuals with purported affiliations to another Defendant (*id.* ¶¶ 14, 134).  Again, Sunstate is never mentioned.

8

No Alleged Elimination of Discounts. Plaintiffs assert that "major rental firms" eliminated discounts by prohibiting "sales staff . . . from quoting below Rouse's lowest benchmark price, even when inventory sat idle." (*Id.* ¶ 187.) Once more, however, Plaintiffs plead no facts suggesting that Sunstate was among those "major rental firms." Similarly, Plaintiffs elsewhere suggest that "Rental Company Defendants [] use layered internal approval systems to deter underpricing" and to limit deviation from the purported "RRI Price[]" range, but again only point to purported practices by three other Defendants—not Sunstate. (*See id.* ¶¶ 92–94, 100.)

No Alleged Parallel Rate Increases. Plaintiffs assert that "Rental Company Defendants repeatedly raised prices in lockstep" over the course of the class period, but yet again only point to alleged "annual rental rate increases" by four other Defendants—not Sunstate. (*Id.* ¶ 188.)

Thus, Plaintiffs do not plead facts suggesting that Sunstate engaged in parallel conduct with other Rental Company Defendants, and they cannot state a conspiracy claim against Sunstate through circumstantial evidence for this reason alone.

**B.     Plaintiffs Fail to Allege "Plus Factors" Regarding Sunstate**

"Because [Plaintiffs] fail[] to plausibly plead parallel conduct, no discussion of any 'plus factors' is necessary." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018); *see also Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389, 391 (9th Cir. 2017) ("'Plus factors' are relevant only if the complaint adequately alleges parallel conduct among the defendants."). Nevertheless, Plaintiffs' "plus factors" are also lacking as to Sunstate. "Plus factors" are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *Hansen*, 2025 WL 2731378, at *8 (citation omitted). Courts have recognized "plus factors" to include "a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm

9

communications." *Id.* (citation omitted).

Plaintiffs purport to allege "plus factors," including actions against self-interest (CAC ¶¶ 180–84) and opportunities to collude at trade association meetings (*id.* ¶ 203). As to supposed actions against self-interest, Plaintiffs do not purport to identify any act that Sunstate took against its self-interest—once more relying only on impermissible group pleading regarding "Rental Company Defendants." As to supposed opportunities to collude, Plaintiffs allege that executives from four Rental Company Defendants attended industry events, but do not allege that Sunstate attended any such events. Even if they did, "[a]bsent additional facts addressing the content of . . . discussions at or the (nefarious) subjects of trade organization meetings, allegations that defendants were members of the same trade organizations are unspectacular and fail to move the needle." *Hansen*, 2025 WL 2731378, at *9 (citation omitted).[3]

Ultimately, Plaintiffs "leave[] unexplained how or why [Sunstate and] this particular subset of" equipment rental companies that license RRI supposedly "formed an agreement while leaving out [the hundreds of] others that also" use RRI. *Id.* at *10. After all, Plaintiffs do not "provide[] a[ny] basis to infer that" the handful of Rental Company Defendants they sue here "had some special agreement among themselves that would differentiate them from the remaining" several-hundred rental companies that license RRI. *Id.* at *10 n.6. And they certainly do not provide any such basis for Sunstate.

Thus, even ignoring Plaintiffs' dispositive failure to plead parallel conduct, Plaintiffs' purported "plus factors" do not place any conduct by Sunstate in a context that raises a suggestion of conspiracy and, therefore, do not render their claims against Sunstate plausible.

---

[3] Plaintiffs also purport to plead as plus factors various other industry-specific factors (CAC ¶¶ 196–202) and DOJ public statements (*id.* ¶¶ 191–95), but those alleged plus factors are not cognizable for the reasons set forth in Defendants' joint motion (*see* Mem. in Supp. of Defs.' Joint Mot. at 22–23).

10

## CONCLUSION

For these reasons, Sunstate respectfully requests that the Court dismiss Plaintiffs' claims against Sunstate.

Dated: January 9, 2026　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ *Matthew M. Martino*
　　　　　　　　　　　　　　　　　　　　　Matthew M. Martino (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Karen Hoffman Lent (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Michael H. Menitove (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Michael A. Lanci (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Elizabeth R. Peled (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　SKADDEN, ARPS, SLATE,
　　　　　　　　　　　　　　　　　　　　　　MEAGHER & FLOM LLP
　　　　　　　　　　　　　　　　　　　　　One Manhattan West
　　　　　　　　　　　　　　　　　　　　　New York, NY 10001
　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 735-3000
　　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 735-2000
　　　　　　　　　　　　　　　　　　　　　matthew.martino@skadden.com
　　　　　　　　　　　　　　　　　　　　　karen.lent@skadden.com
　　　　　　　　　　　　　　　　　　　　　michael.menitove@skadden.com
　　　　　　　　　　　　　　　　　　　　　michael.lanci@skadden.com
　　　　　　　　　　　　　　　　　　　　　elizabeth.peled@skadden.com

　　　　　　　　　　　　　　　　　　　　　Amy Van Gelder (N.D. Ill. 6279958)
　　　　　　　　　　　　　　　　　　　　　SKADDEN, ARPS, SLATE,
　　　　　　　　　　　　　　　　　　　　　　MEAGHER & FLOM LLP
　　　　　　　　　　　　　　　　　　　　　320 S. Canal St.
　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 407-0700
　　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 407-0711
　　　　　　　　　　　　　　　　　　　　　amy.vangelder@skadden.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　　　*Sunstate Equipment Co., LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Matthew M. Martino*