**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: CONSTRUCTION EQUIPMENT RENTAL ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 1:25-cv-3487<br>MDL No. 3152<br><br>Hon. Sara L. Ellis |

**CASE MANAGEMENT ORDER NO. 4**
**ORDER REGARDING PRODUCTION OF**
**ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS**

This ESI Protocol Order shall govern Plaintiffs and Defendants (collectively, "the Parties", and each individually, a "Party") and the Non-Parties (as defined herein) in the above-captioned multi-district litigation whether they currently are involved or become so in the future, and any related actions that may later be consolidated with this multi-district litigation (collectively, the "Action").

The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol Order. Nothing in this ESI Protocol Order shall be construed to affect the admissibility of discoverable information. Pursuant to the terms of this ESI Protocol Order, information regarding search processes and electronically stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI as irrelevant, undiscoverable, inadmissible, unduly burdensome, not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. The Parties specifically reserve their rights and objections to any discovery that may be served upon them in this Action. For the

avoidance of doubt, a Party's compliance with this ESI Protocol Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

## I.    GENERAL PROVISIONS

A.    **Applicability**: This ESI Protocol Order will govern the review and production of ESI and paper documents.

B.    **Federal Rules**: Except as may be set forth herein, this ESI Protocol Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or the Local Rules for the Northern District of Illinois (the "Local Rules" or, when referencing a particular rule, a "Local Rule").

C.    **Deadlines**: References to schedules and deadlines in this ESI Protocol Order shall comply with Federal Rule of Civil Procedure 6 with respect to computing deadlines.

D.    ESI Liaisons:

1.    **Designation:** Plaintiffs and each Defendant agree to designate ESI Liaisons, and notify all other Parties of such designation in writing, within 14 days after entry of this ESI Protocol Order. Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

2.    **Duties of ESI Liaison**: Each ESI Liaison will be prepared to promptly participate in meet and confer processes in a good faith effort to resolve any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions. The Parties will rely on the liaisons, as needed, to confer about ESI and to try to resolve technical disputes without Court intervention. The ESI Liaisons for

2

the Requesting Party or Parties shall be included on all correspondence relating to the Producing Party's document production responsive to that request.

E.    Definitions:

1. "Plaintiffs" as used herein shall mean the individual Plaintiffs named in the operative complaint filed by Plaintiffs and such Plaintiffs' counsel.

2. "Defendants" as used herein shall mean the Defendants named in the operative complaint filed by Plaintiffs and such Defendants' counsel.

3. "Non-Parties" as used herein shall mean other individuals or entities who may produce ESI and paper documents in this Action, who will be subject to the terms of this ESI Protocol Order to the same extent as the Parties.

4. "Producing Party" means the Party producing documents.

5. "Receiving Party" means the Party receiving production of documents.

6. "Requesting Party" means the Party requesting production of documents.

**F.**    **Confidential Information and Preservation**: For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Confidential or Highly Confidential under any order entered by the Court in the Action or confidentiality stipulation entered into by the Parties. The Parties acknowledge that nothing in this ESI Protocol Order waives, restricts, or eliminates the Parties' "clawback" rights and obligations pursuant to any confidential order in this Action.

**II.**    **<u>GENERAL PRODUCTION FORMAT PROTOCOLS</u>**

**A.**    The Parties agree to produce documents in the formats described below. A Producing or Requesting Party may seek to use a different format for a targeted set of documents if the agreed format is not reasonably technically feasible to produce or review, in which case the

3

Parties shall promptly meet and confer with respect to such request and shall submit the issue for resolution by the Court only if they are unable to resolve the dispute through the meet and confer process. To the extent practicable, any alternative formats proposed should not materially degrade the searchability and useability of ESI or other materials.

B. **TIFFs**: Except for structured data and specified file types addressed in "Production of Native Items" below, production images will be provided as black and white, single-page Group IV TIFFs of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image. Each image shall be branded according to the Bates number and any confidentiality designation. Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall, (1) to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file, and (2) if such imaging is not reasonably practicable, be produced in native format. Documents that are difficult to render in TIFF may be produced in their native format with a placeholder TIFF image stating the Bates number of the file and the wording "Document Produced Natively" (along with any appropriate confidentiality designation). Documents that are difficult to render in TIFF that require redaction may be produced with redactions applied in the native file, so long as the redactions are applied using a native redaction tool, such as "Blackout" or "BlackBar."

C. **Text Files**: Each ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named with the Bates

number of the first page of the corresponding production item. Text files shall contain any hidden content, tracked changes, edits, comments, notes, and other similar information of the ESI item to the extent technically feasible.

1. **OCR**: A Producing Party may make paper documents available for inspection and copying/scanning in accordance with Federal Rule Civil Procedure 34 or, additionally or alternatively, scan and OCR paper documents if it chooses. Where OCR is used, the Parties will take all reasonable steps to generate accurate OCR. The Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. In such instances, or in the event that a Producing Party does not choose to use OCR at all, the Producing Party will either (a) make the paper documents available for inspection and copying in accordance with Federal Rule Civil Procedure 34, or (b) identify in the load file that the file is not OCR.

2. **ESI**: Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available.

D. **Production of Native Items**: The Parties agree that ESI shall generally be produced as TIFFs with an accompanying load file, which will contain the ESI data points listed in Appendix 1 hereto. The exceptions to this rule shall be: (a) documents for which the metadata or other information readily identifiable for the Producing Party indicates the document contains hidden content, embedded comments, or tracked changes (e.g., a Microsoft Word document with "bubble" comments and/or different color tracked changes) only if the hidden content, embedded comments, or tracked changes are not viewable on the TIFF image file, (b) spreadsheet-application files (e.g., Microsoft Excel), (c) presentations (e.g., Microsoft PowerPoint), (d) source code, (e) multimedia

audio/visual files, such as voice and video recordings (e.g., .wav, .mpeg, and .avi), and (f) any other native file types that cannot be rendered as readable image files. These categories of ESI shall be produced in native format.

1. In addition to producing the above file types in native format, the Producing Party shall produce a single-page, Bates-numbered TIFF slip sheet indicating that a native item was produced with the wording "Document Produced Natively," along with extracted text where available and with the applicable data points listed in Appendix 1. The corresponding load file shall include NativeFileLink information for each native file that is produced.

2. For any ESI that is required to be produced in native format that contains an embedded object(s) with privileged information, to the extent it is necessary to preserve the privilege, the Producing Party may produce the embedded object(s) and its parent file in TIFF format according to the requirements in Section II.B.

3. The Parties agree to meet and confer prior to producing native file types other than a-f above, in which case the Producing Party shall disclose the file type and meet and confer with the Requesting Party on a reasonably useable production format.

4. The Parties agree to meet and confer to the extent that there is relevant structured data that resides in a fixed field within a record or file, or stored in a structured format, such as databases/data application files (such as Oracle, SQL, Access, SAP, QuickBooks) or data sets, to determine the best reasonable form of production of usable data.

5. Through the pendency of the Action, the Producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner

that does not materially alter or modify the file or the metadata.

**E.**      **Requests for Other Native Files**: Other than as specifically set forth above or in this paragraph, a Producing Party need not produce documents in native format. If a Receiving Party would like a particular document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Receiving Party may request the production of native files by identifying by Bates number(s) the specific document(s) at issue and explaining the reason for its request that the document(s) be produced in native. The Parties shall meet and confer in good faith regarding the request and shall submit to the Court for resolution if the Parties have been unable to resolve the dispute through the meet and confer process. Any native files that are produced pursuant to this paragraph should be produced with a link in the NativeFile field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

**F.**      **Instant Messages/Text Messages and Mobile Data**: To the extent the Parties reach agreement concerning the relevance, proportionality, collection, and production of instant messages/text messages (e.g., Microsoft Teams, Slack) and/or data contained on mobile devices such as smartphones and tablet computers, or such materials are compelled to be produced in this Action, the Parties shall meet and confer prior to such production to determine the production format for such ESI.

G.      Bates Numbering:

1.   All images must be assigned a Bates number that must always: (1) be unique across the entire document production, (2) maintain a constant prefix and length (e.g., ten-digits and 0-padded) across the entire production, (3) contain no special characters or embedded spaces, except hyphens or underscores, (4)

be sequential within a given document, and (5) identify the Producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

3. To the greatest extent practicable, the Producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images. If Bates number branding obliterates or obscures any part of an underlying image, upon request of the Requesting Party, the Producing Party shall re-produce the affected ESI items with the branding in a different location that does not obliterate or obscure the underlying images.

**H.** **Parent-Child Relationships**: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a paper copy of an e-mail with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable. The family of documents should also be identified using a family ID number or other unique identifying number, such as the beginning Bates number of the parent document.

**I.** **Load Files**: All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (e.g., an Opticon file), as well as a metadata (.dat) file with the metadata fields identified in Appendix 1 on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The

total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. Load files shall not vary in format or structure within a production, or from one production to another.

**J.** **Color**: Any document produced as a native file shall be produced as it was regularly utilized and, to the extent applicable, in color. Other documents or ESI containing color generally need not be produced in color in the first instance. However, if the original color is necessary to understand the meaning or content of the document, a Producing Party may opt to produce the documents in color in the first instance or the Requesting Party may request in writing that the Producing Party produce that document or ESI item (identified by Bates number) in its original color. If the Producing Party does not promptly agree to produce the requested document or item in color, the Parties shall promptly meet and confer in good faith before submitting any dispute to the Court. The production of any documents and/or ESI in color shall be made in native format or single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol Order regarding productions in TIFF or native format apply to any productions of documents and/or ESI in color.

**K.** **Confidentiality Designations**: If a particular document or ESI item qualifies for confidential treatment pursuant to the terms of any protective order entered by the Court in the Action or confidentiality stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that, where applicable, does not obliterate or obscure any part of the underlying images. This designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this ESI Protocol Order shall not waive any protection or confidential treatment. If confidentiality designation branding obliterates or obscures any part of an underlying image, upon request of the Receiving Party, the

Producing Party shall re-produce the affected ESI items with the branding in a different location that does not obliterate or obscure the underlying images.

**L.** **Production Media & Protocol**: Documents shall be exchanged through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission, or in any other manner of production agreeable to the Receiving Party or Parties. Any Requesting Party that is reasonably unable to resolve any technical issues with the electronic production method used for a particular production may request that a Producing Party provide a copy of that production using Production Media, as described below.

1. All Production Media will be encrypted, and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself. Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of the material in that production. For example, if the production comprises document images on three external hard drives, the Producing Party may label each hard drive in the following manner: "[PARTY] Production March 1, 2026-001," "[PARTY] Production March 1, 2026-002," and "[PARTY] Production March 1, 2026-003." Where the Production Media used is an external hard drive (with standard PC compatible interface) or USB drive, such production media must be sent no slower than overnight delivery via FedEx, UPS, USPS, or private courier.

2. Each item of Production Media (or, in the case of productions made via FTP link or other secure online transfer, each production transmittal letter) shall

include (1) the Producing Party's name; (2) text referencing that it was produced in this Action; (3) the production date; and (4) the Bates number range of the materials contained on such production media item.

3. Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates number range that is being replaced. Each Party shall designate the appropriate physical address for productions that are produced on Production Media. However produced, a Producing Party shall provide clear instructions for accessing the production, including any necessary passwords or encryption keys.

**M.** **Materials Collected for or Produced in Other Litigation or Proceeding**: To the extent that a Producing Party intends to satisfy a request for production by producing materials collected or produced in a case consolidated into this Action or in a different litigation or proceeding, at the time the Producing Party discloses its search methodology it shall disclose in writing (a) the fact that the Producing Party intends to use such materials to satisfy certain request(s) for production and (b) the case caption or information necessary to identify the litigation or the proceeding. A Requesting Party retains the right to challenge the sufficiency of any production not subject to the ESI, search, and privilege methodology agreed to under this ESI Protocol Order. If a Requesting Party raises such a challenge, the Requesting and Producing Parties shall promptly meet and confer in a good faith effort to resolve any dispute and shall submit the matter to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

**III.** **PAPER DOCUMENT PRODUCTION PROTOCOL**

11

**A.** **Coding Fields**: The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) AttachRange, (f) Page Count, (g) Custodian, (h) Confidentiality, (i) Redacted, and (j) Text Path.

**B.** **Unitization of Paper Documents**: Documents that exist in paper copy prior to production will be scanned to TIFF image format and produced in accordance with the specifications set forth in this Order. The Producing Party shall use reasonable best efforts to ensure that paper copy documents are made searchable by OCR prior to production. The Producing Party shall use reasonable best efforts to ensure that paper copy documents, including those in files and binders, are logically unitized for production. When scanning paper copy documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records to the greatest extent possible. The Parties will utilize best efforts to ensure that paper documents are produced in consecutive Bates stamp order.

## IV. ESI METADATA FORMAT AND PROCESSING ISSUES

**A.** **Excluded Files**: ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types and forms of data that may be excluded are described in IV.G, and additional file types may be added to the list of excluded files by further written agreement of the Parties.

B. Metadata Fields and Processing:

1. **Date and Time/Time Zone:** No Party shall modify the date or time as contained in any original ESI, except, to the extent reasonably practicable, ESI items shall be processed so that each Producing Party's documents are produced using a consistent time zone. For the avoidance of doubt, no Party has to alter the underlying time

zones of its systems or source data so that its ESI reflects a single uniform time zone as other Parties.

2. **Auto Date/Time Stamps or Other Automatically Updating Fields:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, rather than the date of collection or processing.

3. If a Producing Party believes the above provision(s) are not reasonably practicable for some portion of its production, it shall inform the Requesting Party or Parties and promptly meet and confer in a good faith effort to resolve any dispute. The Parties may submit any such dispute to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

4. Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

5. The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) all Custodians of the document, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeFile fields, which should be populated, when applicable, regardless of whether the fields can be populated pursuant to an automated process.

C. Redaction Format:

1. The Parties agree that, for any ESI items for which this ESI Protocol Order

otherwise permits production in TIFF format, redactions may be made in TIFF format, with each redaction clearly indicated. Any metadata fields reasonably available and which can be disclosed without disclosing privileged information shall be provided. The Producing Party may, alternatively, produce the item as a redacted native file in accordance with the following paragraph.

2. If a redacted item would otherwise be required to be produced as a native file under this ESI Protocol Order or is difficult to render in TIFF, then, to the extent reasonably practicable, it should be produced as a native file with redactions using a native redaction tool, such as "Blackout" or "BlackBar." For the avoidance of doubt, this includes ESI in categories II.D(b), (d), and (f).

3. If it would be unduly burdensome to produce a redacted item as a native file using a native redaction tool as outlined in IV.C.2 above, then, to the extent reasonably practicable, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that may not print when opened as last saved by the custodian or end user.

3. If audio/visual or other media files require "redaction," the Parties shall promptly meet and confer concerning the format of production and privilege assertions. If the Parties are unable to reach agreement through meet and confer discussions, they may seek resolution from the Court.

D. Email Collection and Processing:

1. **Email Threading:** The Parties may use email threading to avoid review and production of duplicative information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will

email thread suppression (a) eliminate the ability of a Requesting Party to identify every custodian who had a copy of a produced document or sent or received an email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. Parties may make reasonable requests for unthreaded copies of particular emails in advance of depositions, which will not be denied absent good cause.

2. **Email Domains:** A Producing Party may exclude from their ESI search process uniquely identifiable categories of documents (e.g., emails from domains typically associated with junk email, such as non-industry retailer advertising, non-industry newsletters, or alerts from non-industry sources). To the extent that a Producing Party opts to exclude uniquely identifiable categories of documents under this provision, that Party shall disclose the list of the domain names excluded to the Requesting Party in a timely fashion and no later than the deadline for substantial completion.

E. **Rolling Productions**: The Parties agree to produce documents in phases on a rolling basis consistent with the Court's orders relating to scheduling.

F. **De-duplication**: A Producing Party may de-duplicate files in a method that does not result in responsive documents with unique content being withheld from production. Removal of near-duplicate documents shall not occur without first conferring in good faith with the Requesting Party and reaching an agreement as to scope and methodology. Unless otherwise agreed by the Parties, the following requirements apply to all document de-duplication by a Producing Party:

1. De-duplication shall be performed at the family level for emails and at the

15

document level for loose ESI. Entire document families may be considered duplicate ESI, and deduplication shall not break apart families.

2. When duplicate ESI exists in the files of multiple custodians, the Producing Party shall produce one copy and list all custodians who possessed it in the "All Custodians" metadata field in Appendix 1. Likewise, the "All File Paths" field shall contain the file path(s) for each non-produced duplicate.

3. All BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of de-duplication, must be identified in the BCC metadata field specified in Appendix 1 to the extent such metadata exists. In the event of rolling productions of documents or ESI items, the Producing Party will, as needed, supplement the load files with updated CustodianOther information, as well as BCC information to the extent such metadata exists.

4. Duplicate electronic documents shall be identified by MD5 or SHA-1 hash values for binary file content. All electronic documents bearing an identical value are a duplicate group. The Producing Party may produce only one document or native file for duplicate ESI documents within the duplicate group to the extent practicable. The Producing Party is not obligated to extract or produce entirely duplicate ESI documents.

5. Duplicate messaging files shall be identified by MD5 or SHA-1 hash values for the email family, which includes the parent and email attachments.

6. If a Producing Party intends to use a de-duplication that does not comply with the above provisions, it shall so inform the Requesting Party or Parties of the fact and

nature of the intended alternative method, after which the Parties shall promptly meet and confer in a good faith effort to resolve any disputes about such proposal. The Parties may submit any dispute on this issue to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

G. **Zero-byte Files, Duplicative, and Otherwise Extraneous Data: The Parties may filter out the following files and data:**

1. Zero-byte files—stand-alone files identified as zero-bytes in size—that do not contain responsive file links or file names. If the Requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the Requesting Party may request that the Producing Party produce the zero-byte file. The Requesting Party may provide a Bates number to the Producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production;

2. Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, unless such files are the sole source of unique relevant ESI., Nothing in this provision shall preclude a Requesting Party from seeking (through meet and confer and application to the Court) to require a Producing Party to review and produce materials from such backup data files that are the sole source of unique relevant ESI;

3. On-line access data such as temporary internet files, history files, cache files, and cookies;

4. Operating system files and executable files, except for any source code used as part of a pricing methodology for construction rental equipment; and

5. Structural files not material to individual file contents (e.g., .CSS, .XSL, .XML, .DTD, etc.).

**H.** **Hidden Text**: To the extent reasonably practicable, ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments. The Parties shall use reasonable efforts to ensure that, at the time of production, all hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments are visible on the face of the TIFF image(s), unless redacted in accordance with this ESI Protocol Order.

**I.** **Embedded Objects, Spreadsheets and Hyperlinked Files**: Objects embedded with content that is not visible in a document (e.g., a Word or Excel file document embedded within a document or E-mail) shall, when reasonably practical and able to be extracted on a systematic basis utilizing the Producing Party's or vendor's existing software capabilities without undue burden, be extracted and produced as separate documents and treated like attachments to the document. The Parties agree that other embedded objects including, but not limited to, images, logos, icons, and footers, need not be extracted and produced as separate documents by a Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate attachments).

Hyperlinked files (i.e., individual internal or non-public documents hyperlinked to an email) shall be collected and produced[1] (1) if they are within the Producing Party's possession,

---

[1] Collected, responsive documents shall be produced in accordance with the Parties' agreed-upon or Court-ordered search parameters.

custody, or control and stored in a data source that the Producing Party uses regularly in the ordinary course of its business to share hyperlinked files; (2) if they are referenced by a document that is in the review universe; and (3) when reasonably practical utilizing the Producing Party's or its vendor's reasonably available technology without undue burden. If a Producing Party takes the position that it cannot retrieve such hyperlinked files or cannot do so without undue burden, it shall provide notice to the Requesting Party, including information on the environment or platform their data is stored in, the tools or license options available for the collection of hyperlinked documents, and the technological limitations and costs associated with those tools or licenses, and the Parties will meet and confer. To the extent reasonably practicable with the Producing Party's or its vendor's reasonably available technology, hyperlinked files shall be produced as child documents to the parent containing the hyperlink. Given the technological limitations with hyperlinks, if a Producing Party produces a hyperlinked file as a child document, the Producing Party does not represent or concede that the produced hyperlinked document is the as-transmitted file. The Requesting Party will have a right to request a reasonable number of contemporaneous hyperlinked files (i.e., the version of the linked document that existed at or around the time the hyperlink was sent) from each Producing Party. The Parties shall meet and confer in good faith before taking any disputes to the Court.

J.     **Compressed Files**: Compression file types (i.e., .CAB, .GZ, .TAR, .z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

K.     **Password-Protected, Encrypted, or Proprietary-Software Files**: With respect to any ESI items that are password-protected or encrypted, the Producing Party will take reasonable steps to disable the protection so that the documents can be reviewed and produced if appropriate.

19

In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI. ESI that cannot be reviewed because proprietary software is necessary to view the ESI will, to the extent identified, be disclosed to a Requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI. The Parties are not required to provide information on passwords obtained or the manner with which password-protected or encrypted files were made accessible. Where the Producing Party no longer possesses the software required to read or decipher files otherwise subject to production, it is under no obligation to obtain such software and provide it to the Requesting Party, provided, however, that, if the Requesting Party attempts to obtain such software, the Producing Party shall cooperate with the Requesting Party to the extent reasonably necessary to identify the software, its licensor, and any technical information or permissions needed for the Requesting Party to read or decipher the files.

L.     **Structured Data:** To the extent discoverable ESI will be produced from a structured database, the Parties shall meet and confer in an attempt to agree upon the scope, content, and format of production. In the course of meeting and conferring, the Parties shall discuss, among other things, sample reports, data fields, a reasonably usable production format, and a data dictionary or other explanatory documents if any exists. Upon review of the production, the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and fields, and the Producing Party will undertake a good faith and reasonable effort to provide that additional information.

M.     **Corrupted or Technical Issue Documents**: If a document being produced cannot be processed (e.g., it is corrupt or protected by an unavailable password), a single-page, Bates-

stamped image slip sheet stating "File Could Not Be Processed" or similar wording will be provided and a meta-data field for "Technical Issue" shall be populated.

## V.     PARAMETERS FOR COLLECTING DOCUMENTS

A.     **Document Custodians and Custodial Data Sources**: Consistent with the deadlines provided in the Court-ordered schedule,[2] each Party must disclose in writing an initial list of its own proposed document custodians ("Document Custodians") who the Producing Party believes, based up its reasonable investigation, may reasonably be likely to contain unique responsive information. If a Requesting Party contends that additional Custodians or custodial sources should be added, then the Parties shall meet and confer in good faith and, in the event the Parties are unable to reach agreement, the Requesting Party may seek relief from the Court.

B.     **Non-Custodial Sources**: Consistent with the deadlines provided in the Court-ordered schedule, the Parties agree to meet and confer regarding any "Non-Custodial" document sources that the Producing Party believes, based upon its reasonable investigation, may reasonably be likely to contain unique responsive information. For the avoidance of doubt, and without suggestion that the following are relevant sources, "Non-Custodial" document sources include departmental files, shared drives, multi-user messaging platforms (or "chat" platforms) such as Slack or Microsoft Teams, cloud storage accounts, online repositories, social media accounts of the Party, intranets, and databases. The Parties shall meet and confer regarding how the Producing Party's objections and proposed limitations to the scope of discovery would change the Non-Custodial document sources from which the Producing Party will collect and produce documents.

---

[2] If no Court-ordered schedule governs the events listed herein, the Parties shall meet and confer in good faith regarding potential deadlines. If agreement cannot be reached, the Parties may seek relief from the Court as appropriate. For the avoidance of doubt, the entry of any subsequent Court-ordered schedule shall not alter or restart obligations or deadlines that have already been completed or expired, absent agreement of the Parties or further order of the Court.

If a Requesting Party contends that additional Non-Custodial document source(s) should be added, then the Parties shall meet and confer in good faith and, in the event the Parties are unable to reach agreement, the Requesting Party may seek relief from the Court. The Parties may seek resolution of any such dispute by the Court only if they have been unable to reach resolution through the meet and confer process.

C.    **Mobile Device ESI**: For Document Custodians agreed on by the Parties or ordered by the Court, a Producing Party will take reasonable steps to identify whether any potentially relevant and non-duplicative ESI items in the possession, custody, or control of the Party are located on any mobile devices, including cellphones and tablets, used by any of those Document Custodians. The Parties will take reasonable steps to preserve any such potentially relevant and non-duplicative ESI items in their possession, custody, or control, including by instructing Document Custodians to refrain from deleting relevant communications and, where feasible and appropriate, suspending auto-delete settings for relevant messaging applications for the duration of the hold, and preserving existing device backups to the extent reasonably feasible. To the extent the Parties reach agreement concerning the production of relevant and non-duplicative ESI contained on mobile devices or the Court orders such production, then the Producing Party shall collect those ESI items using commercially available tools sufficient to preserve all reasonably available relevant content and metadata associated with those items. Within 30 days of designation of a Document Custodian, whether by agreement or Court order, the Producing Party shall disclose whether it contends any relevant mobile device used by that Custodian is not within its possession, custody, or control and the basis for that position. Any production of ESI from mobile devices shall be made in a reasonably usable form consistent with the requirements of this ESI Protocol Order.

D.    Search Methods:

1. **Search Methodology Disclosure:**

   a. The Parties agree to meet and confer promptly after each Party discloses in writing an initial list of its proposed Document Custodians regarding (a) potential use and identification of search terms, tools, or techniques, (b) use of technology assisted review or artificial intelligence ("TAR/CAL/AI") in any manner that culls the corpus of materials to be reviewed by the Producing Party, and (c) all parameters for scoping the review and production efforts (e.g., application of date ranges, custodians, non-custodial sources, etc.).

2. **Technology Assisted Review Negotiation Process:**

   a. A Producing Party may use Technology Assisted Review ("TAR"), Continuous Active Learning ("CAL"), or Artificial Intelligence ("AI") to sort documents for linear review without disclosure of that use.

   b. If any Party intends to use TAR/CAL/AI to cull the volume of materials to be reviewed by the Producing Party, it shall promptly notify the Requesting Party so that such TAR/CAL/AI use can be considered in the context of all other proposed search parameters (e.g., custodians, search terms).

   c. The Parties will meet and confer regarding the use of TAR/CAL/AI to cull any volume of materials, alone or in combination with some other methodology. If any Party intends to use TAR/CAL/AI to cull the volume of materials to be reviewed by the Producing Party, then, consistent with the deadlines provided in the Court-ordered schedule, the Parties will: (a) agree on a TAR/CAL/AI Protocol and, as necessary, submit it to the Court; or (b) submit one letter brief of no more than 5 pages total for Plaintiffs and no more than 5 pages total for

Defendants concerning any disputes as to the TAR/CAL/AI Protocol. The Parties reserve the right to propose the use of TAR/CAL/AI to cull any corpus of materials at any time during discovery if circumstances change or new circumstances later arise that a Party believes warrant the use of such tools, and the Parties agree to meet and confer in good faith regarding such use.

3. **Search Term Negotiation Process:**

   a. Before a Producing Party uses search terms and consistent with the deadlines provided in the Court-ordered schedule, the Producing Party shall describe in writing to the Requesting Party or Parties the search protocol the Producing Party intends to use and shall include: (a) the search methodology criteria to be used to identify the universe of documents to which search terms will be applied (e.g., custodians, non-custodial sources, and date ranges), (b) proposed search terms to be applied, subject to revision based on, for example, meet and confer of the Parties, and (c) any use of TAR/CAL/AI. At the time the Producing Party discloses its proposed search terms, it shall disclose in writing the requests for production (if any) for which the Producing Party will not use search terms to identify materials responsive to that request.

   b. Promptly after receiving the Producing Party's proposed search terms, the Requesting Parties will provide any proposed revisions and additions to the Producing Party's search terms. For purposes of this paragraph, the Defendants shall cooperate to provide a single set of proposed revisions and additions to a Plaintiff Producing Party, with the understanding that there may be a set of global search terms and sets of individualized search terms. Likewise, the Plaintiffs shall cooperate to provide a single set of proposed revisions and

24

additions to a Defendant Producing Party, with the understanding that there may be a set of global search terms and sets of individualized search terms.

c.   Promptly after receiving proposed revisions and additions to the Producing Party's search terms, (a) the Producing Party shall provide any objections to the Requesting Parties' proposed revisions including information sufficient to support its objections to the proposed revisions and additions, and (b) if the objection is based on proportionality or burden, a hit report for each objected to revision or addition to the search terms showing the number of hits, hits with families, unique hits for that search relative to the total number of hits, and unique hits for all search terms under discussion between the Producing Party and the liaison for the receiving Parties. If a party is unable to generate a hit report with this information using existing software capabilities, the Parties shall meet and confer to discuss the format of the report.

c.   After exchanging proposed search terms, proposed revisions/additions, and any objections to proposed revisions/objections, the Parties shall promptly meet and confer in good faith to try to resolve any disputes as to the search terms to be applied to the Producing Party's materials. Any unresolved differences shall promptly be brought to the Court's attention.

d.   Before the Parties conclude their negotiations outlined above regarding search terms, and no later than the deadline provided by the Court-ordered schedule for the Parties to raise disputes with the Court regarding search terms, the Producing Party shall explain in writing how it will identify and review non-

25

email materials that do not have a sufficient amount of searchable text or are otherwise not suited to identification using text-based searches, including, for example, video files, audio files, and structured data.

4. **Otherwise Known Responsive Information:** A Producing Party's use of a search methodology does not relieve it of the duty to produce information that it becomes aware of that is responsive to the agreed-upon or Court-ordered scope of a request for production, even if that information was not captured in the Producing Party's document collection, review, or production.

5. **Reservation of Rights:** The Requesting Party does not waive objections that the Producing Party's search methodology was not implemented in a proper, effective, or good faith manner.

## VI.   CLAIMS OF PRIVILEGE AND REDACTIONS

A.      **Production of Privilege Logs**: If a Party withholds a document (fully or in redacted form) otherwise discoverable by claiming that it is privileged, that Party shall produce a privilege log consistent with Federal Rule of Civil Procedure 26(b)(5)(A) and any applicable local rule or procedure, except as otherwise described below. The privilege log must be detailed enough to enable other Parties to assess the applicability of the privilege asserted and should include for each withheld document[3] (1) the sender, recipient, and each individual copied or blind copied on the document, including names and email addresses,[4] (2) the date the document was created and last

---

[3] If, due to the number of privileged documents involved, creating a privilege log with the information identified in Paragraph VI.A would create an undue burden, the Parties will meet and confer to discuss whether a categorical log may be appropriate.

[2] For clarity, Parties must only include "the sender, recipient, and each individual copied or blind copied on the document, including names and email addresses" for emails.  For all other files, the

modified, to the extent such information is reasonably available, (3) the file name or email subject, as applicable and to the extent such information does not reveal privileged or protected information,[5] (4) the document extension (e.g., .msg, .pptx, etc.), (5) the Bates number or Control Number of the document, and (6) privilege or protection type; and (7) a description of the basis for the privilege or protection claimed sufficient to allow the Receiving Party to assess the claim. The privilege log should denote (through a marking such as an asterisk or on a separate list) which individuals identified on the log are attorneys and what Party each such attorney represents. The privilege log should denote family relationships such that the parent of a child attachment being logged is identified through control number(s) or bates number(s) and the child attachment of a parent document being logged is identified through control number(s) or bates number(s). The privilege log shall be produced in Excel (XLS or XLSX) format. To the extent possible, available file metadata may be used to complete the fields in the privilege log.

**B.** **Logging of Threads**: Parties shall log all emails in a thread that are under a claim of privilege; provided, however, that a Party is not required to log lesser-included (i.e., earlier-in-time) emails in that thread so long as the topmost (i.e., latest-in-time) email is logged, and any un-logged lesser-included email (1) is subject to an independent claim of privilege and (2) concerns the same subject matter as the topmost logged email (such that the description of the topmost logged email is sufficient to demonstrate the privilege applicable to the lesser-included, unlogged email). Parties will include a field listing all additional participants that are not included on the

---

Parties must instead include the document author and custodian to the extent such information is reasonably ascertainable from the document or its metadata.

[3] With respect to the file name or email subject, the Producing Party may substitute a description of the document where the contents of these fields may reveal privileged or protected information. In the privilege log(s), the Producing Party shall identify each instance in which it has modified the content of the file name or email subject field.

topmost email.

1.  **Email Chains:** If there is more than one unique branch of an email thread, each branch will be individually logged if independently responsive and claimed to be privileged or otherwise protected from discovery.

2.  For the avoidance of doubt, if any lesser-included email in a thread (or any attachment thereto) is not independently privileged, the topmost email thread must be redacted rather than withheld.

3.  Nothing in this ESI Protocol Order precludes a Party from separately logging all lesser-included emails in a thread, or from requesting that the Producing Party separately log lesser-included emails in particular threads.

4.  In the event of a dispute over a Party's assertion of privilege over unlogged emails, the Parties shall promptly meet and confer in good faith before submitting any dispute to the Court.

C.      **Exclusions from Logging Potentially Privileged Documents**: The following categories of documents need not be reflected in a Producing Party's privilege log, unless good cause exists to require that a Party does so or the Parties otherwise agree:

1.  Any communications exclusively between a Producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with this Action, or with respect to information protected by Federal Rule Civil Procedure 26(b)(4), testifying experts in connection with this Action.

2.  Documents created or communications after the filing of the initial complaint in *AXG Roofing, LLC v. RB Global, Inc. et al.*, 1:25-cv-03487 (N.D. Ill. April 1,

28

2025) between a Producing Party and its corporate in-house and/or outside counsel regarding this Action.

3. Work product prepared by or for the Producing Party or its agent in anticipation of this Action.

The Parties agree to meet and confer to discuss other categories of documents that may be excluded from the log. Compliance with the logging provisions of this section shall not constitute a waiver of any privilege or protection.

**D.** **Documents Redacted for Privilege**: The Producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information and redacted documents will be noted as such in the Privilege Log. Redacted documents need not be logged in the first instance, so long as (a) for emails, the names of the sender and all recipients of the email are not redacted, (b) for non-email documents, the redaction is noted on the face of the document and in a redaction metadata field, (c) the Producing Party includes a metadata field (PrivRedacted) indicating that the document was redacted on the basis of privilege, so that the Receiving Party can readily identify the universe of documents containing privilege redactions, if the basis for the privilege is apparent from the unredacted portion of the document. For the avoidance of doubt, no Party shall be permitted to make wholesale redaction to documents, such as email bodies, to avoid the requirements imposed by this ESI Protocol Order that privileged materials be adequately logged.

**E.** **Personally Identifiable Information ("PII") Redactions**: A Producing Party may redact personally identifiable information (e.g., medical or health issues of an individual, including patient names, medical bills, procedures, or claims; Social Security Numbers; bank account information; personal passcodes). Such redactions will be identified as "Redacted—Personal Data"

on the face of the document.

F.     **Redaction and Withholding for Relevance:** If a Producing Party wishes to redact highly sensitive, irrelevant information, it shall notify the Requesting Party. The Producing and Requesting Parties shall promptly meet and confer in a good faith effort to resolve any dispute and shall submit the matter to the Court for resolution only if they are unable to reach resolution through the meet and confer process. Except pursuant to the Parties' agreement or, if agreement cannot be reached, through Court resolution, a Producing Party may not redact information on the ground that it is irrelevant, nor may a Producing Party withhold a member of a document family on such grounds.

VII.    **NON-PARTY DOCUMENT REQUESTS**

A.     **Non-Party Document Subpoenas**: All Non-Party document subpoenas shall be served on all counsel of record in compliance with Federal Rule of Civil Procedure 45. Service via email on a designated service list shall constitute compliance with Federal Rule of Civil Procedure 45.

B.     **Non-Party Document Productions:** The recipient of a Non-Party document production shall serve a copy of that document production on all counsel of record within seven (7) calendar days of receiving the document production, unless the Non-Party is to be deposed and all counsel of record will not receive the document production before the deposition commences under the seven calendar day timeline. In that event, the recipient of a Non-Party document production shall serve that document production on all counsel of record as soon as reasonably possible and at least the day before the Non-Party deposition. Service of documents or a file transfer link via email on a designated service list shall constitute compliance with this paragraph.

C.     **Informing Non-Parties of This Order:** The Parties agree to provide a copy of this ESI Protocol Order with any document subpoena served in this Action.

30

## VIII.   MISCELLANEOUS PROVISIONS

**A.**      **Service of Discovery Requests and Disclosures**: All discovery requests and discovery-related disclosures may be served via email on a Party's ESI Liaison with copies to leadership counsel for all Plaintiffs and counsel for all Defendants.

**B.**      **Inaccessible ESI:**  The following categories of ESI are presumed to be inaccessible and are not subject to discovery and need not be collected or preserved for purposes of this Action, provided, however, to the extent they are the sole source of unique relevant ESI, the parties will promptly meet and confer regarding reasonable steps to address those sources (including whether preservation, restoration, collection, or search is appropriate):

1.      Backup systems and/or tapes used for disaster recovery that is substantially duplicative of data that is more accessible elsewhere;

2.      On-line access data such as temporary internet files, history files, cache files, and cookies;

2.      Deleted, slack, fragmented, or unallocated data only accessible by forensics;

3.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

4.      Structural files not material to individual file contents (e.g., .CSS, .XSL, .XML, .DTD, etc.);

5.      Data stored on photocopiers, scanners, and/or fax machines.

Except for the above categories, if a Producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are not reasonably accessible without undue burden or cost or otherwise unnecessary under the circumstances, it must disclose such

31

sources to the Requesting Party and the Parties shall promptly meet and confer in good faith to try to resolve such issues. If the Requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall promptly meet and confer in good faith to try to resolve such issues. The Parties may submit such issues to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

C.     A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the Action or constitutes reasonably accessible ESI that could be subject to review and production.

F.     **Limitations.** Nothing in this ESI Protocol Order establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any document or ESI. Nothing in this ESI Protocol Order shall be interpreted to require the production of information protected by the attorney-client privilege, work product doctrine, or any other reasonably applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

G.     **Variations or Modifications:** Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Parties, which will be confirmed in writing. In the event a Producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, including with respect to any applicable deadlines, the Producing Party will notify the Requesting Party of the variation or modification. Upon request by the Requesting Party, those Parties will promptly meet and confer in good faith to address any issues in a reasonable and timely manner prior to seeking Court intervention.

H.     **Best Efforts Compliance and Disputes.** The Parties agree to use their best efforts

to comply with and resolve any differences concerning compliance with any provisions of this ESI Protocol Order. If a Producing Party cannot comply in a particular circumstance with this ESI Protocol Order, such Party shall promptly inform the Requesting Party in writing why compliance with the ESI Protocol Order is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the ESI Protocol Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

SO ORDERED.

Dated: August 3, 2026

_____
Honorable Sara L Ellis

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name[6] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| BegBates | All | Beginning Bates number as stamped on the production image. |
| EndBates | All | Ending Bates number as stamped on the production image. |
| BegAttach | All | First production Bates number of the first document of the family. |
| EndAttach | All | Last production Bates number of the last document of the family. |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of Email chains in review software. |
| Email Subject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified |
| TimeSent | Email | Time email was sent. |

---

[6] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[6] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| TimeCreated | Edoc | Time the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| DocType | Email, Edoc | Single choice field that indicates the file is an email, edoc, attachment or paper copy. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "Yes" indicator that the document is redacted. Otherwise, leave blank. |
| PrivRedacted | All | "Yes" indicator that the document is redacted on the basis of privilege. Otherwise, leave blank. |
| Confidentiality | All | Indicates any designation under a protective order entered by the Court in the Action or a confidentiality stipulation entered into by the Parties. |
| Page Count | All | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). |
| File Path | All | File/path of the location where the item was located during the normal course of business. |

| Field Name[6] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| All File Paths | All | File Path that would have been provided for each version of the document that was not produced due to de-duplication. |
| HasHiddenContent[7] | Non-Email ESI | Y if hidden content, otherwise N or empty. |

---

[7] "Hidden Content" for purposes of this field shall include tracked changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.